[Crim. No. 168.   Fourth Appellate District.—July 21, 1934.]

THE PEOPLE, Respondent, v. PETE AGUILAR, Appellant.

S. L. Heisinger for Appellant.

U. S. Webb, Attorney-General, and Alberta Belford, Deputy Attorney-General, for Respondent.

MUNDO, J., *pro tem.*—The defendant was charged, by an information filed in the Superior Court of Fresno County, with the crime of murder. Upon arraignment he entered a plea of not guilty and was tried before a jury which returned a verdict convicting him of manslaughter. A motion for a new trial was denied. The defendant then perfected this appeal from the judgment and from the order of the trial court denying his motion for a new trial.

The grounds upon which appellant relies for a reversal of the judgment and order denying his motion for new trial are as follows: 1. That the evidence is insufficient to support the judgment in that it does not sufficiently show that appellant Pete Aguilar, while driving the automobile which caused the death of Lucius Powers, Sr., was intoxicated. 2. That the court erred in admitting into evidence a statement made by Pete Aguilar taken shortly after the accident. 3. That the court erred in refusing to give instructions requested by the defendant. 4. That the court erred in giving certain instructions offered by the prosecution.

It appears from the evidence that one Lucius Powers, Sr., was, on the fourth day of September, 1933, at about the hour of 5:30 o'clock in the evening, operating an automobile in a northerly direction on U. S. California Highway No. 99, and that when he was at a point on said highway approximately two miles north of the city of Fowler his car collided with an automobile being driven in a southerly direction by the defendant Pete Aguilar. The point of impact was on the left front wheel of each automobile. At the place over which the two cars were being driven the highway is divided into three traffic lanes. The cars came together in the easterly one.

Both Powers and the defendant were, shortly after the collision, taken to the emergency hospital in Fresno. Powers died from injuries received in the collision some three or four hours later. The defendant was removed to the county hospital, where he remained for a period of approximately seven days.

Both sides agree that the case revolves around the question as to whether the defendant was under the influence of in-

toxicating liquor at the time of the collision. Mr. Stapleton, a nurse at the emergency hospital, testified that defendant's breath was alcoholic. He asked the defendant if he had been drinking, and the defendant replied, "I drink jackass". Mr. Stapleton was asked by the district attorney to "state whether or not in your opinion, . . . , the use of intoxicating liquor had so far affected this defendant, as you saw him that night, to affect to an appreciable degree his ability to operate an automobile", and the answer was, "it had". Upon cross-examination he stated that he made no examination as to intoxication but determined that defendant was intoxicated because of his alcoholic breath and thick tongue and his thick speech.

Dr. Dahlgren of the emergency hospital testified that when he first observed the defendant shortly after he was admitted to the hospital, there was a smell of alcohol on his breath and his speech was "slurring in character". When asked if the injuries to his nose, knee and hand were serious, the doctor replied, "I don't believe sufficient to produce that type of speech." The doctor testified that in his opinion the defendant was under the influence of liquor to the extent that his mental control and co-ordination of speech were interfered with.

At the county hospital, on the evening of the accident, the defendant was observed by Dr. Ginsburg and found to be under the influence of intoxicating liquor. At the trial the doctor stated that in drawing his conclusions he took into consideration the defendant's injuries and did not deem them sufficient to give rise to the symptoms which the patient was exhibiting but rather thought the symptoms indicated intoxication.

The witnesses Chess and Tyson testified that at the scene of the collision they did not notice anything unusual about the demeanor or actions, speech or appearance of the defendant, and that in assisting him from his car they did not smell alcohol on his breath. Other witnesses testified to the effect that the defendant had not been drinking within two or three hours immediately preceding the collision.

There was testimony to the effect that a specimen of defendant's urine, taken the day following the collision, showed that alcohol in the amount of two per cent was present. But without considering this testimony and without consider-

ing defendant's admission of drinking, we are of the opinion that the record contains ample evidence to support a finding that the defendant was under the influence of intoxicating liquor at the time of the collision.

On the night of the collision, while the defendant was at the county hospital, the following statement was taken: "Q. What is your name? A. Pete Aguilar. Q. Where do you live, Pete? A. I live at Reedley. Q. Working down there? A. With my brother down there at the pool hall at Reedley. Q. Your brother is down there? A. Yes, I was working with him. Q. Working with him today? A. All the time; not today; all the time. Q. How far out of Reedley does he live, Pete? A. What? Q. How far out of Reedley does your brother live? A. He lives just in the same lot, out in the back. Q. Same what? A. In the same lot. Q. Same lot? Q. Yes. Q. In the town or outside of town? A. In town. Q. In town? A. Yes. Q. I see. When did you leave Reedley today, Pete? A. I was leaving Reedley—let me see—about 2—2:20, I believe. Q. 2:20? A. Two and something. After 2, anyway. Q. Where did you go when you came to town? A. I was down—coming downtown in Fresno, and I was going back to home when I had a wreck. Q. You had been in Fresno and were going home? A. Yes. Q. How much did you have to drink in Fresno, Pete? A. Not very much. Q. How much? A. I had the same God damn drink there where I was over there. Q. What were you drinking, wine? . . . A. I don't like wine very much. Q. You don't. What do you like? A. I like whiskey, you know. Q. You like whiskey. Is that what you were drinking today, Pete? A. Drank about two glasses down there before I came down here, over there. I come down to the hospital because I was—some girl there. Q. Where did you go? Where did you say you went to see the girls? A. Well, I tried to see one girl here at the hospital. Q. Here at the hospital? A. Yes. Q. Yes. A. So I figured after while I might go home. Q. You didn't go to see the girl? A. No. After that I figured I might as well go home. Q. Did you have a shot before you started home? A. No. Q. You didn't? A. No. Q. What were you drinking— whiskey, Pete? A. Yes. I had one more shot there. Q. Where? A. I had two over at Reedley; I had one more here. Q. Two at Reedley and one here? A. Yes. Q. Of

what—jackass? A. Yes. Three of them. Three little glasses. I didn't pay any attention. Q. How did you happen to run into this man, Pete? A. I don't know; was something the matter with the car? Q. What? A. I tried to pass another car and it happened. Q. You tried to pass up another car? A. Yes, and I happened to get hurt. Q. Was anybody with you, Pete? A. No, nobody; just me. Q. All by yourself? A. Yes, I was going home. Q. How do you feel now? A. I feel all right. Q. You do? A. Yes. Q. Head hurt? A. Feel just like you are. Q. Feel just like I do? A. Yes. Q. Does your head hurt? A. Well, I know it is hurt, all right, but I don't think it is hurt very much. Q. Not very much. Scratched up some? A. Yes. Q. What kind of a car were you driving, Pete? A. Packard. Q. You drive a Packard? A. Yes. Q. Sedan? A. Yes, sir. Q. Yours or your brother's? A. It is my brother's car. Q. Did you have any liquor in the car, Pete? A. No, sir, I don't think; if you find anything you can give whatever you say. Q. What is that A. If you find anything on the car you can give hell on me; I never carry liquor in my car; that is one thing I never do there. Q. Do you know who it was you ran into, Pete? A. No. Q. Didn't you know your car caught on fire? A. I know it. As soon as I saw it burn up I tried to get away from it. Q. Yes, I suppose so. A. Why sure. No use staying around there. Mr. Carter: All right. Anything you want to ask? (No response.) Mr. Carter: No question in your mind about his condition at all, Doctor? . . . Dr. Ginsburg: No.'' Present at the time were Dr. H. M. Ginsburg and internes, Deputy Sheriff John W. Ford, Deputy Sheriff J. Ed Martin, Chief Deputy District Attorney Rae B. Carter propounding the questions, and Ray E. Adams, shorthand reporter. No interpreter, friends or representatives of the defendant were present and the defendant was not advised that he was entitled to be represented by counsel nor was he informed that any statement he might make could be used against him.

There is no evidence that the statement was ever read over to or signed by defendant, but we do not understand that objection was made to it on that ground. At the close of the testimony of Mr. Adams, shorthand reporter, the district attorney offered in evidence the above statement

as written by Mr. Adams. The defendant objected to its admission. The objection was overruled and the statement was admitted. In this connection the defendant contends, first, that the statement was not taken in the form and manner which would make it available to the prosecution as a free and voluntary statement of the defendant, and, secondly, that the last question and answer in the statement were not a part of the defendant's statement and that when they were read to the jury undoubtedly raised in the minds of the jury a question as to the sobriety or condition of the defendant and therefore the question and answer were prejudicial to the rights of the defendant.

The attorney-general contends that the statement did not amount to a confession of guilt and therefore no foundation was necessary for its admission in evidence, but, he contends, even if it were considered as a confession the only preliminary proof necessary to lay the foundation for its introduction in evidence would be to show that there were no threats, promises or inducements made which would cause the defendant to make the statement. The record shows that the statement was made without any previous inducement, promise or offer of leniency in punishment, or by reason of any duress, intimidation or threat. While the statement was being taken, the defendant was lying on the dressing table with a bandage over his head. He spoke with broken English but apparently understood everything that was asked him. There is no intimation of persistent questioning as there was in the case of *People* v. *Gow,* 23 Cal. App. 507 [138 Pac. 918], cited by counsel, nor is there any evidence of the defendant being frightened or unwilling to answer. To the contrary, it appears that he was quite willing and inclined to talk. Under such circumstances it is our opinion that the statement was a voluntary one and that the trial court did not err in allowing it to be received in evidence. ▮ While it might be better practice when taking statements of this kind to inform the party of his right to remain silent and of the fact that his statement may be used against him, the failure to affirmatively instruct the party does not affect the admissibility of the statement, especially where, as here, the statement was not made as testimony or under conditions which necessarily required such specific instructions. (*People* v. *Booth,* 72 Cal. App. 160 [236 Pac.

987].) That the defendant's counsel or friends were not present did not operate in anywise to make the statement involuntary. The proceedings were not such as required the presence of counsel. No interpreter was necessary. The record amply indicates that the defendant understood and expressed himself without the necessity of an interpreter.

Respecting the question put to Dr. Ginsburg, and his answer, we are of the opinion that no damage resulted by their inclusion in the statement as received in evidence, for the reason that Dr. Ginsburg testified independently to the same effect, that in his opinion the defendant was intoxicated when he was brought into the hospital. Furthermore, the question and answer being made in the defendant's presence and along with the rest of the statement, the defendant could have, if he desired, commented on them. In effect the answer of the doctor amounted to an accusation that the defendant was intoxicated, and since the defendant did not make any comment we must assume he did not desire to dispute the statement of the doctor.

The fact that the defendant may have been injured or was under the influence of intoxicating liquor when he made the statement does not affect its admissibility where the character of the statement clearly indicates that he was not so injured or so much intoxicated as to be unconscious of the meaning and effect of his words. (*People* v. *Farrington*, 140 Cal. 656 [74 Pac. 288]; *People* v. *Ramirez*, 56 Cal. 533 [38 Am. Dec. 73]; *People* v. *Egan*, 133 Cal. App. 152 [23 Pac. (2d) 1042].)

Complaint is made that the instruction given by the court upon the issue of intoxication was too narrow in its import. Appellant contends that his proffered instruction should have been given, especially the following portion: " . . . that the public or persons coming in contact with him could readily see and know that it was affecting him in this respect and was reflected in his walk, acts and conversation . . . ", and he cites the case of *People* v. *Dingle*, 56 Cal. App. 445 [205 Pac. 705], in support of his contention. The instruction which was given is as follows: " . . . any person is under the influence of intoxicating liquor within the meaning of this statute if intoxicating liquor has so far affected the nervous system, brain or muscles of the driver of an automobile as to impair to an appreciable degree his ability

to operate his car in the manner that an ordinarily prudent and cautious person in the full possession of his faculties, using reasonable care, would operate or drive a similar vehicle under like conditions. You are further instructed that under this section it is not necessary that the person accused should be so called 'dead drunk', or hopelessly intoxicated, but if you shall be convinced beyond a reasonable doubt and to a moral certainty from the evidence in this case that this defendant was in such a condition from the use of intoxicating liquor, that it so affected his acts, conduct or movements that the public or persons coming in contact with him could readily see and know that it was affecting him in this respect, and that in such condition this defendant was operating a motor vehicle upon a public highway in the County of Fresno, State of California, then this defendant was under the influence of intoxicating liquor within the meaning of the statute.'' The language of this instruction is identical with the approved instruction in the Dingle case, excluding, however, the portion which defendant claims was proffered and improperly refused by the trial court. In commenting on the instruction it was said in the Dingle case that the instruction was too favorable to the defendant. The court in the Dingle case said (p. 453): ''A person may be so far under the influence of intoxicating liquor that, to an appreciable degree, there is an impairment of his ability to operate his automobile in the manner that an ordinarily prudent and cautious person, in the full possession of his faculties, would operate a similar vehicle under like conditions; and yet the person whose ability to operate his car is thus impaired might not be so drunk that the public, or persons coming in contact with him, could 'readily' see and know that intoxicating liquor was affecting his acts or conduct and was being reflected in his walk and conversation. The drink may have impaired his ability to drive his car properly by imparting to him a dash of dangerous recklessness, without in anywise manifesting itself in his speech, or in his walk, or be noticeable in his intellectual processes.'' The instruction as given by the trial court herein adequately covers the subject and we do not agree that it is too narrow in its import and such as would lead the jury to believe that the testimony of police officers and experts should be more readily believed than the testimony of the average person.

■ In instructing the jury that the driving of an automobile upon a public highway while under the influence of intoxicating liquor is a felony, the court erred, for neither under section 112 of the California Vehicle Act nor section 367d of the Penal Code is the crime defined as a felony.

■ But since the defendant was convicted of manslaughter, we do not see how an erroneous instruction on second degree murder could be prejudicial to him. The other instructions given fully and correctly defined manslaughter, the crime of which the jury convicted the defendant. We find no prejudicial error in the instruction complained of.

■ Appellant further contends that the court erred in refusing to instruct the jury on excusable homicide and thereby deprived the defendant of the benefit of his defense as to accident and misfortune. A review of the record does not disclose any evidence on which such an instruction could be based and therefore the court's refusal to so instruct was not prejudicial.

■ The court also refused to give an instruction proposed by defendant which he claims was offered pursuant to the authority of *People* v. *McGrath*, 94 Cal. App. 520, at 524 [271 Pac. 549]. His proposed instruction was: "In determining whether or not the defendant was under the influence of intoxicating liquor, you are to consider only the mental and physical condition of the driver, that is, his ability to operate his car and not to the manner in which the car is being actually driven nor the result of its operation." The instruction was properly refused. In the first place, the rejected instruction does not follow the authority cited, and, secondly, the rule announced in the McGrath case, with respect to the ability of the driver to operate his car, is covered fully by other instructions given by the court.

■ Finally it is contended that the court erred in refusing to instruct the jury that the burden of proof as to every link in the chain of evidence necessary to a conviction is borne out by the prosecution. This contention must fail for the court did instruct the jury that the state had the burden of proving the defendant guilty beyond a reasonable doubt, and the court also advised the jury that "it is essential in the chain of evidence relied upon each fact be established to a moral certainty and beyond a reasonable doubt". The

court also read to the jury an instruction based on section 1096 of the Penal Code.

The judgment and order are affirmed.

Barnard, P. J., and Jennings, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 20, 1934, and the following opinion then rendered thereon:

THE COURT.—The petition for hearing is denied. In denying said petition we withhold our approval of the statement in the opinion that under section 112 of the California Vehicle Act the crime of driving an automobile by any person upon a public highway while under the influence of intoxicating liquor is not defined as a felony.