[Crim. No. 4105. In Bank.—September 27, 1937.]

THE PEOPLE, Respondent, v. CANUTO MANZO, Appellant.

Anna Zacsek and John S. Cooper for Appellant.

U. S. Webb, Attorney-General, and Walter L. Bowers, Deputy Attorney-General, for Respondent.

EDMONDS, J.—The defendant has appealed from a judgment of conviction of murder in the first degree, with punishment fixed by the jury at life imprisonment, and from an order denying a new trial. The killing is admitted but it is claimed that the evidence is insufficient to sustain the verdict; and also, that the court erred in failing to give the jury certain instructions and in the exclusion of evidence.

The crime occurred in the yard adjoining the homes of the defendant and his victim. Apparently there were a number of small houses on one lot. The defendant and his family lived in one of these houses. Jose Garcia, who was killed, and his family lived in another. Jose Enriquez, sometimes called Pipas, and Ignacio Vargas, single men, each occupied a small house in the group. Garcia was living at this place when the defendant moved there about three years before the crime occurred. They were on friendly terms until a dispute arose concerning a ditch which the defendant dug across the yard. Garcia objected to this ditch and asked the defendant to fill it up but the defendant refused to do so. At the time, according to defendant, each cursed the other and Garcia told the defendant that he was going to kill him.

The defendant testified that after this difficulty, which occurred about two months before Garcia was killed, he bought a revolver because he was afraid of Garcia. However, he said that he never carried it except at night and al-

though he saw Garcia on numerous occasions afterward, at no time did Garcia speak to him or make any attempt to attack him. While he claims to have twice seen Garcia carrying a dagger, he could not fix these times with any certainty.

On the night of the shooting, the defendant returned to his home about 3 o'clock in the morning. According to him, he heard voices in the yard near Vargas' house. With his gun in his pocket, he walked in the direction of the conversation. Before he reached the persons carrying on the conversation, he recognized Garcia's voice but continued toward them. The explanation of the defendant as to why he went on if he was afraid of Garcia was that he wanted to see if his brother was one of those taking part in the argument. He also testified that when he was some twenty-five or thirty feet away from the men, although he knew his brother was not there, he stood and listened to the discussion which was going on. At that time he saw that Enriquez and Vargas were talking to Garcia. Unquestionably both Enriquez and Vargas were drunk while Garcia had been drinking. The defendant's story of what occurred next is that as he approached the three men, Garcia pushed Enriquez to one side and said to him (defendant), ''You poche son-of-a-bitch, get away from there I am going to kill you''. Speaking of events which followed, the defendant said he then called Garcia the same names which Garcia had spoken to him, ''or more''; that Garcia then came toward him and he took out his pistol and fired two shots, one to the ground and one to the side; that he fired a third shot with deliberate aim when Garcia was five or six feet away, and that Garcia then fell.

The defendant claims that he shot in self-defense; that at the time Garcia said he would kill him ''he took the dagger out towards me'', and that he saw the glitter of this dagger. However, no weapon was found on the deceased and there is no evidence other than the statement of defendant that he was armed. Witnesses to the shooting testified that when Garcia pushed Enriquez, the defendant told him not to do so; that Garcia replied it was not any of his (defendant's) business; that the defendant then backed up from the rear of an automobile around which they were standing and drew out his gun and fired at the ground; that Garcia said he was not afraid of him or his gun or his bullets and did not change his position; but the defendant then fired a second

shot at Garcia and the latter moved away from him toward the front of the car; that as Garcia was about six feet distant· the defendant "just stood there and fired the third shot at him" with deliberate aim and then walked over to him and said, "Die you dirty Indian, you had it coming to you".

This evidence is clearly sufficient to support a verdict of murder in the first degree. It shows that the defendant sought out the man he claimed to be afraid of and entered into a conversation which did not concern him and had nothing to do with his affairs. All of the witnesses to the acts of the defendant, including his own brother, say that the deceased made no move of any kind toward the defendant, but that, on the contrary, Garcia was shot while backing away from the defendant. If that is what occurred, and the jury had a right to believe it did from the evidence before it, then Garcia was shot with "no considerable provocation" which implies the malice necessary to be present to constitute the crime of murder. (Secs. 188, 189, Pen. Code.) This evidence also supports the implied finding of the jury that Garcia was killed without any provocation and under circumstances which show an abandoned and malignant heart. (*People* v. *Larrios,* 220 Cal. 236 [30 Pac. (2d) 404]; *People* v. *Fleming,* 218 Cal. 300 [23 Pac. 28].)

The principal point made by the defendant in connection with the instructions to the jury is that manslaughter was not defined. His counsel did not offer an instruction concerning manslaughter in the belief that it was a "general instruction" which would be considered by the court as having been offered. But included in an instruction offered by the People was the following taken from section 192 of the Penal Code: "Manslaughter is the unlawful killing of a human being without malice. It is of two kinds, 1. Voluntary, upon a sudden quarrel or heat of passion. . . . " This portion of the instruction was stricken out by the trial judge and no instruction on the subject of manslaughter was given.

If there was sufficient evidence in the case upon which the jury might have returned a verdict of manslaughter, an instruction defining it should have been given even if not offered by the defendant. In the trial of criminal cases it is the duty of the judge to instruct the jury on all of the general principles of law pertinent to the case. (*People* v.

*Scofield,* 203 Cal. 703 [265 Pac. 914] ; 8 Cal. Jur. 309.) But it is not error to fail to give an instruction on manslaughter when there is no evidence to support a verdict finding the defendant guilty of that crime. The record in this case does not show any facts which would warrant a belief that the defendant shot Garcia "upon a sudden quarrel or heat of passion". ■ Provocation by words only, no matter how contemptuous or insulting, is not sufficient to reduce the offense of an intentional homicide from murder to manslaughter. (*People* v. *Bruggy,* 93 Cal. 476 [29 Pac. 26] ; *People* v. *Turley,* 50 Cal. 469 ; *People* v. *Jackson,* 78 Cal. App. 442 [248 Pac. 1061].) After the words were spoken by Garcia, the defendant, according to his own testimony, "didn't do anything, but immediately he (Garcia) took this weapon and he came on top of me. . . . As soon as he pushed Pipas he came towards me, took the dagger out towards me". It was then that the defendant took his revolver and "shot two shots to frighten him". Following these shots the defendant took deliberate aim and fired again. At no time has the defendant claimed that the shooting was occasioned by his anger or passion. On the contrary, his excuse for the crime is that just before the shots were fired he believed Garcia was about to make an attack upon him with a knife or dagger and that he would be killed or suffer great bodily injury. While this testimony presented the issue of self-defense, it did not entitle him to an instruction concerning manslaughter.

■ That the jury determined the killing was not upon any sudden heat of passion but with premeditation is evident from its verdict. The jury was instructed as follows: "The unlawful killing must be accomplished with a deliberate and clear intent to take life in order to constitute murder in the first degree. The intent to kill must be the result of deliberate premeditation. It must be formed upon a pre-existing reflection and not upon a sudden heat of passion sufficient to preclude the idea of deliberation. . . . If the unlawful killing is done without the provocation and sudden passion which reduces the offense to manslaughter, . . . this is murder of the second degree, unless the evidence proves the existence in the mind of the slayer of the specific intent to take life. If such specific intent exists at the time of such unlawful killing the offense committed would, of course, be murder

of the first degree." With those instructions, the jury returned a verdict of murder in the first degree. By refusing to reduce the crime to murder in the second degree, the jury found that the defendant acted with the deliberate and clear intent which constitutes murder in the first degree. Its verdict is amply supported by the evidence.

■ The defendant also charges error because a proposed instruction on the subject of self-defense was refused. In other instructions offered by the defendant and also in an instruction offered by the People, the jury was fully advised concerning the elements necessary to establish self-defense. The offered instruction adds nothing to those which were given and was properly omitted.

■ During the trial, the defendant's brother testified that just before the shooting occurred he heard Garcia call defendant "a miserable poche" and say that "he was going to kill him". On cross-examination, he was confronted with his testimony at the preliminary examination which the People claimed was a contradiction of what he had related on the witness stand. It was conceded that his former testimony was correctly stated in the transcript from which the district attorney quoted. The defendant's counsel then asked him whether he understood the question which he answered at that time. An objection to this question was sustained. While the question should have been allowed as one offering the witness an opportunity to explain his answer (sec. 2052, Code Civ. Proc.), it is evident that the ruling was not prejudicial to the defendant and affords no basis for a reversal of the judgment.

The judgment and the order denying a new trial are and each of them is affirmed.

Shenk, J., Waste, C. J., Curtis, J., Langdon, J., and Seawell, J., concurred.