[Crim. No. 4703. In Bank. Sept. 13, 1946.]

THE PEOPLE, Respondent, v. WILLIAM NEAL DORMAN et al., Defendants; MERLIN JAMES SMITH, Appellant.

Frederick W. Kant for Appellant.

Robert W. Kenny, Attorney General, Frank Richards, Deputy Attorney General, Fred N. Howser, District Attorney (Los Angeles), and Robert Wheeler, Deputy District Attorney, for Respondent.

SHENK, J.—The defendants William Neal Dorman and Merlin James Smith were indicted for the murder of Ralph William Bigelow in Los Angeles County on April 17, 1944; also of robbing Bigelow of money, a watch and an automobile, and of kidnapping Bigelow for the purpose of robbery. The defendants were convicted by a jury on all counts, the punishment for the murder, found to be first degree, being fixed at life imprisonment, and for the kidnapping, imprisonment for life without possibility of parole. The defendant Smith alone has appealed from the judgment and the order denying his motion for a new trial.

At the time of the events hereinafter related Smith was a sergeant in the United States Army. He was 19 years old and weighed about 165 pounds. Dorman was a sailor in the United States Navy, 24 years old, and weighed about 130 pounds. Bigelow, the deceased, was a mechanic, 41 years old, 5 feet 6 inches in height, and weighed 135 pounds.

Dorman and Smith met in a cafe called the "Brite Spot" on April 15, 1944. The next day, Sunday, Smith met Bigelow

in the same cafe. Bigelow bought the drinks and they stayed until midnight. They were unsuccessful in obtaining food in a restaurant across the street because of some difficulty Smith had had with a waitress the previous night. So they drove to the home of Hutson, Bigelow's employer, where they had something to eat and spent the remainder of the night. Next morning about 9:30 Hutson took them in an automobile to Bigelow's home where Smith met Bigelow's family. At that time Bigelow had about $70 in his possession. About an hour later Smith and Bigelow went to the "Brite Spot" where a Mr. McKee met them. Dorman came in at noon and joined the group which sat drinking in a booth. Dorman and Smith repaired to the rest room. In a discussion while there, according to Smith's statement to police officers, Dorman suggested that they "roll" Bigelow, but Smith remonstrated, saying that Bigelow was a "good guy" and was buying the drinks. Between 3 and 4 o'clock in the afternoon McKee took them in an automobile to Bigelow's car. Smith, Bigelow and Dorman got into the front seat of Bigelow's car with Smith at the wheel. McKee watched them until they drove away. They stopped in a park where they got out of the car and one or the other or both of the defendants struck Bigelow. Dorman and Bigelow returned to the rear seat of the car. At 6 o'clock they were seen driving at a high rate of speed, with the sailor beating the civilian. They parked for about 3 minutes in an alley where Smith leaned over the front seat and struck at Bigelow, whose head and face were blood-smeared. Bystanders shouted that they would call the police, whereupon Smith drove off at high speed, cutting across a vacant lot. They went some distance, stopped, and one or the other of the defendants (each said it was the other) used a rock about twice the size of a man's fist and dealt Bigelow the final and fatal blows. They demonstrated to police officers the size of the rock. When he was asked by officers why he did not stop Dorman, Smith replied: "Well, I told him I didn't think he needed to hit him so many times." They took Bigelow's watch and money, about $30, and rolled his body over an embankment. They drove away in Bigelow's automobile as far as Tehachapi, where they abandoned it and proceeded north. Smith pawned Bigelow's watch in Stockton. Both defendants were arrested in Sacramento. Human blood was found in the rear seat of Bigelow's car, and on Smith's garrison cap. Buttons missing from Smith's shirt were also

found in the car. Bigelow's body was discovered on April 23d in an advanced state of decomposition. The immediate cause of death was determined to be subdural hemorrhage due to basal fracture of the skull. In addition there were lacerations and contusions around the eyes, nose and lips, and other places on the front and sides of the head.

The indictment was presented on May 5, 1944, and arraignment set for May 9th. On that day the court appointed the public defender as counsel for Smith. After entry of the plea of not guilty, the trial was set for June 16th. On Wednesday, June 14th, Smith appeared in court with appointed counsel and attorney James O. Warner, when a motion was made to substitute Warner as his attorney. The judge asked Mr. Warner whether he was prepared to go ahead on Friday the 16th. He replied that he didn't know, that there were still some witnesses he wished to interview, and that the defendant Smith had been in a position to employ private counsel only within the last two days. The judge stated that he would not permit a substitution of counsel if it meant a continuance and that the defendant had competent counsel of his choice with ample time for preparation. Codefendant's counsel, also in the court room with her client, reported that she was prepared to try the case, was ready to go to trial, but would ask for a little more time if it would "assist counsel." After a conference with the defendant and his counsel, Mr. Warner stated that he was willing to accept the responsibility of going on with the trial on Friday. The judge denied the motion for substitution, but permitted Mr. Warner to appear as counsel associated with appointed counsel, saying to the latter that he was still in the case for the purpose of rendering assistance, that his duty was to remain with the defendant and not abandon him unless he was represented by counsel prepared to go to trial.

On Friday, June 16th, the case was called, a motion for continuance was denied, but because of the congested condition of the calendar the trial was postponed until Monday, June 19th. When the case was called on the 19th the public defender asked to be relieved and his requested was granted. Mr. Warner thereupon asked for a week's continuance, which was denied on the ground that the case had been pending for a sufficient time to permit reasonable preparation and that no unusual circumstances appeared which required a

continuance. The trial proceeded and occupied eight days in the introduction of evidence and two days in argument.

 The first ground of the appeal is that the trial court violated the appellant's constitutional rights by refusing the requested continuance.

Section 1050 of the Penal Code reflects the legislative policy in the trial of criminal cases. It is there provided that the court shall set all criminal cases for trial for a date not later than 30 days after the date of entry of the plea, that no continuance of the trial shall be granted except upon affirmative proof in open court that the ends of justice require it, and for no longer than is affirmatively proved that the ends of justice require. That section discloses a policy which the law generally enjoins upon the courts, namely, an orderly and expeditious administration of justice. The first question then, in substance, is whether the trial court abused its discretion in determining that there was no affirmative showing that the ends of justice required a continuance, that is to say, in determining that there was in this case no showing that the time for preparation of the defense was inadequate.

A similar question was involved in *Avery* v. *Alabama*, 308 U.S. 444 [60 S.Ct. 321, 84 L.Ed. 377]. The sole question there presented was whether, in violation of the Fourteenth Amendment, the petitioner was denied the right of counsel, with the accustomed incidents of consultation and opportunity of preparation for trial, where, after appointment of competent counsel, the trial court denied a continuance. The Supreme Court observed that the disposition of a request for continuance was a matter for the exercise of the court's discretion and not ordinarily reviewable. However, it was pointed out, the denial of any representation at all would constitute a clear violation of the Fourteenth Amendment; and denial of opportunity by appointed counsel to confer, to consult with the accused, and to prepare his defense, could convert the appointment into a sham and nothing more than a formal compliance with the Constitution's requirement that an accused be given the assistance of counsel, and would not satisfy the Constitution's guarantee. (*Cf. Powell* v. *Alabama*, 287 U.S. 45 [53 S.Ct. 55, 77 L.Ed. 158, 84 A.L.R. 527].) In the Avery case the petitioner was convicted of murder and the death penalty was imposed. He had been arraigned on March 21, 1938, when the court appointed two practicing attorneys to represent him. His trial was set for March 23d. It was not

reached then but was called the next day when the attorneys moved for a continuance on the ground that, being busy with other trials, they had not had time to prepare the defense. Apparently the motion was denied for the trial proceeded, and a motion for new trial, made on the ground that denial of a continuance deprived the defendant of equal protection of the laws, was denied. In concluding that the petitioner had not been deprived of the benefit of counsel guaranteed by the Fourteenth Amendment, the court examined the record and found that appointed counsel "performed their 'full duty intelligently and well' . . . Their appointment and the representation rendered under it were not mere formalities." At page 452 it was said: "That the examination and preparation of the case, in the time permitted by the trial judge, had been adequate for counsel to exhaust its every angle is illuminated by the absence of any indication, on the motion and hearing for new trial, that they could have done more had additional time been granted." The distinguishing features of the Powell and Avery cases were noted in *Betts* v. *Brady*, 316 U.S. 455, 463-464 [62 S.Ct. 1252, 86 L.Ed. 1595].

In *People* v. *Whinnery*, 55 Cal.App.2d 794 [131 P.2d 33], on appeal from a judgment of conviction of robbery committed in Los Angeles County, it was contended that the defendant was denied a fair trial by the refusal to grant a continuance and a substitution of counsel. The defendant appeared with counsel at his arraignment, a plea of not guilty was entered, and the trial was set for a date one month later. Ten days before the trial date the defendant, in court personally, was informed by the judge that his counsel was in the county jail, that his trial would go on at the time set, and that he should be prepared to go to trial either with his then counsel or another. On the trial date he appeared with his attorney and sought to substitute other counsel, which the trial judge said he would permit only if counsel sought to be substituted, who had been engaged seven days previously, was prepared to proceed. The court permitted new counsel to be associated with original counsel and continued the trial four days, but at the latter time the defendant again moved to substitute associate counsel and to obtain a continuance. When the request was refused the defendant chose to withdraw his plea of not guilty and substitute a plea of guilty, which he did only after full admonition by the court as to the meaning

and consequences of his act. Considering the zealous regard for the defendant's rights and the coordinate right of the People to the orderly processes of administration and effective execution of the laws, the District Court of Appeal concluded that the record showed no abuse of discretion in the trial judge's refusal to grant a substitution and continuance. Any observation that the guilty had been brought to justice was properly rejected as a controlling factor, since the question of prejudice is not necessarily cognizable when the result is due to arbitrary action of the trial judge; furthermore that the mere fact that the record shows the defendant's guilt is not determinative on the matter of miscarriage of justice. (*People* v. *Mahoney*, 201 Cal. 618, 627 [258 P. 607]; *People* v. *Cowan*, 44 Cal.App.2d 155, 159 [112 P.2d 62].) The same trial judge denied the requests for substitution and continuance in the present case under somewhat similar circumstances. Here the trial did not commence until at least the seventh day after employment of private counsel, and appointed counsel, who had the preparation of the case for more than a month, remained to render assistance until the trial started. The conduct of the defense was full and fair. The fact that 33 witnesses testified for the People and only three in addition to the defendants appeared in support of the defense does not necessarily show lack of time for preparation. Considering the rights of the state as well as of the defendant, the time allowed for preparation was not unreasonable. The record discloses that the defendant was ably and energetically represented by counsel of his choice. Representation was not a mere formality, but was representation in fact. None of the defendant's substantial rights was denied him by the action of the trial judge in refusing to grant a further continuance when the case was finally called for trial. (See, also, *People* v. *McNabb*, 3 Cal.2d 441 [45 P.2d 334]; *People* v. *White*, 137 Cal.App. 467 [30 P.2d 555]; *cf. People* v. *Simpson*, 31 Cal. App.2d 267 [88 P.2d 175].)

It is contended that there is no evidence from which the jury could find that the defendants had an intention to or that they did kidnap the deceased. The applicable language is found in section 209 of the Penal Code which reads: "Every person who seizes, confines, inveigles, entices, decoys, abducts, conceals, kidnaps or carries away any individual by any means whatsoever with intent to hold or detain, *or who holds or detains, such individual* for ransom, reward or *to commit extor-*

*tion or robbery . . . or who aids or abets any such act,* is guilty of a felony and upon conviction thereof shall suffer death or shall be punished by imprisonment in the State prison for life without possibility of parole, at the discretion of the jury trying the same, in cases in which the person or persons subjected to such kidnapping suffers or suffer bodily harm. . . .'' It is urged that the relations existing between the defendant and Bigelow were friendly, that the suggestion by Dorman that they rob the deceased was rejected by Smith, and that such evidence does not support a plan to kidnap for the purpose of robbery. The all sufficient answer is contained in the italicized words in the quoted language of the statute, and in the undisputed acts of transporting Bigelow to an isolated spot, and of killing and robbing him. Those acts support the jury's finding without any further evidence of specific intent.

 The court did not err in refusing to give a requested instruction on manslaughter. Manslaughter is not involved in a case where the death of the victim ensues in the perpetration of robbery (Pen. Code, § 189), or in the act of kidnapping for the purpose of robbery (Pen. Code, § 209). Such an instruction is unnecessary and improper in a case such as this where there is no evidence tending to prove that the crime was or might have been manslaughter. (*People* v. *Manzo,* 9 Cal.2d 594, 599 [72 P.2d 119]; *People* v. *Johnson,* 219 Cal. 72, 77 [25 P.2d 408]; *People* v. *Farrington,* 213 Cal. 459, 465 [2 P.2d 814]; *People* v. *Rogers,* 163 Cal. 476, 482 [126 P. 143].) The defendant stresses the fact that they (Dorman and Smith) had been drinking intoxicating beverages. The evidence does not disclose that they did not know what they were doing. Each made statements to the officers describing and indicating an awareness of the events, although Smith later purported to explain that he was merely repeating what Dorman had told him. Voluntary intoxication is not an excuse for crime. (*People* v. *Diaz,* 26 Cal.2d 318 [158 P.2d 194], *People* v. *Cavazos,* 25 Cal.2d 198 [153 P.2d 177]; *People* v. *Fellows,* 122 Cal. 233, 239 [54 P. 830].)

 It is also contended that the trial court erred prejudicially in refusing an instruction to the effect that the jury could disregard any of the confessions of the defendant which was not freely and voluntarily made or which was obtained from the defendant while he was irrational of mind. It is not asserted that any inducement or promise was offered to

the defendant or that he was subjected to any threat or violence. ■ He relies mainly on testimony that he was under the influence of intoxicating liquor. That condition, if it existed, did not deprive the confessions of the required spontaneity to make them free and voluntary. (*People* v. *Farrington,* 140 Cal. 656, 661 [74 P. 288]; *People* v. *Ramirez,* 56 Cal. 533, 535-536 [38 Am.Rep. 73]; *People* v. *Aguilar,* 140 Cal.App. 87, 94 [35 P.2d 137, 142]; *People* v. *Sameniego,* 118 Cal.App. 165, 176 [4 P.2d 809, 5 P.2d 653].) His claimed intoxication when he was arrested in Sacramento was insufficient to invalidate his confession. Similar statements were later made by him in Los Angeles, and it is not asserted that at the latter time he was intoxicated. All of the testimony bearing on the voluntary nature of the confessions was heard by the jury. This defendant does not dispute the fact that he was told by the officers that the charge was serious, that the evidence against him was such that he might be convicted of first degree murder, that he would be permitted to call an attorney, and that in the absence of an attorney he could refuse to answer any question. Both in Sacramento and in Los Angeles he was advised of his constitutional rights, and that any statement made by him would be used against him in court. He expressed his willingness to make a statement of his part in the crime. There is no evidence of any hope or promise held out to him or of any pressure exerted upon him which could reasonably be considered a valid ground for disregarding his confessions as involuntary, or for believing that his willingness to talk was in any degree the result of the conduct of the officers. ■ Where, as here, no rational conclusion can be drawn other than that the confessions were free and voluntary, there is no necessity for an instruction on the subject, and the refusal to give the requested instruction was not error. (*People* v. *Hubbell,* 54 Cal.App.2d 49, 75, 76 [128 P.2d 579]; *People* v. *Chan Chaun,* 41 Cal.App. 2d 586, 592 [107 P.2d 455].)

■ The defendant's final contention is that the court erred in defining the degrees of murder. In defining them the court gave the instructions which were criticized and condemned in recent cases in this court, the last of which is *People* v. *Bernard* (May 17, 1946), *ante,* p. 207 [169 P.2d 636], where it was said at page 214 that when the facts impel a conviction of murder of the first degree "there is no occasion whatsoever to give instructions as to the difference between the

degrees of murder." So it must be said that where, as here, the facts upon any view of the evidence do not admit of a finding other than of murder of the first degree the giving of the challenged instructions was erroneous. But on the whole record the error was not prejudicial. The facts, as found by the jury, would have justified the imposition of the death penalty. (Pen. Code, §§ 189, 190, 209.) In the exercise of its discretion the jury would seem to have extended to the appellant all the leniency which the law permitted.

The judgment and the order are affirmed.

Gibson, C. J., Traynor, J., Schauer, J., and Spence, J., concurred.

CARTER, J.—I dissent.

The majority opinion fails to make either a full or correct statement of the factual situation relative to the arbitrary action of the trial judge in denying appellant an opportunity to be represented by counsel of his own choice prepared to try his case. The facts as disclosed by the record are as follows: Appellant, Merlin James Smith, a boy of 19 years of age, a soldier in the United States Army, with the rank of sergeant, after engaging in a drinking orgy for several days, found himself faced with an indictment returned May 5, 1944, in which he was charged with the crimes of murder, robbery, and kidnapping alleged to have been committed in Los Angeles County on April 17, 1944. His home was in Idaho. He was without friends or means to defend himself. On May 9, 1944, he was arraigned on said indictment in the superior court, and being unable to employ counsel, the public defender was appointed to represent him. At that time his case was set for trial for June 16, 1944. On June 12, 1944, relatives arranged with Mr. James O. Warner of the Los Angeles Bar to represent the appellant, and on June 14, 1944, the matter of substitution of attorneys was brought before the court, appellant having been represented up to that time by the deputy public defender. The latter, together with Mr. Warner, appeared in court at that time, and the public defender made a motion to substitute Warner in his place. In reply the court stated, and the following ensued: "Are you prepared to go ahead on Friday [June 16, 1944], Mr. Warner? MR. WARNER: I don't know, your Honor, at this time; there are some witnesses I want to interview. THE COURT: I am not going to substi-

tute counsel two days before the trial of a case that has been set for more than a month,—— Mr. Warner: Your Honor, for the sake of the record—— The Court (Continuing): ——to force a continuance. Mr. Warner: *This man has only been in a position to employ counsel within the last two days;* he desires to have private counsel and his family desires him to have private counsel. The Court: That may be true, but if we recognized that as a ground for a continuance, all a man would have to do would be to get different counsel all the time and we would never get to trial. . . . The Court: In other words, he has competent counsel right now; he has counsel of his choosing at the time. Merely because he wants to change horses in the middle of the stream, two days before trial, and thus force a continuance—— Mr. Warner: There has never been a continuance granted in this case, your Honor. I understand the man was without funds to employ counsel—— I do not argue against the competency of the Public Defender's office; do not misunderstand me,—— but a man who has counsel furnished for him because of lack of funds, I think, when he is in a position at the earliest possible time to obtain funds and hire counsel within a short time—— there has been no other continuance in this case. The Court: All a defendant is entitled to is to be represented by counsel who are competent to try his case. He has such counsel. He is not entitled to a continuance because he desires to make some change. He has been furnished with adequate and competent counsel at the expense of the County. I haven't any objection to his changing counsel or his being without counsel. But that does not entitle him to a continuance, nor does it entitle him to force his co-defendant to endure a continuance, postpone the time, when that man could be tried. Mr. Warner: Well, the only thing, this motion is a motion for substitution. If there is a motion for a continuance—— I am not making that motion at this time, but if I do make the motion—— The Court: I am not going to furnish you or any defense counsel with grounds for a continuance, Mr. Warner. If I allow a substitution of counsel at the present time, you could come in tomorrow or the following day with the showing you are unprepared to proceed and I would be forced to grant a continuance, because at that time the defendant would be without counsel who were prepared to try the case. At the present time he has counsel who are prepared. Mr. Warner: May I confer with counsel? (Conference between Mr. Warner and

Mr. Robinson.) MR. WARNER: Your Honor, in the matter of James Smith, I have talked with the defendant and Mr. Robinson, and I am willing to accept the responsibility of going to trial on Friday. I do not think that the conditions of substitution—— the conditions that are imposed on the defendant's counsel precludes any subsequent developments that might arise—— I do not know that I am going to make a motion for a continuance, but I am going to have to put some intensive time in on this matter. Anything which develops which I feel justifiably should be brought to the court's attention in the defense of a serious charge, I want it understood that I would bring it to your Honor's attention whether you grant it or not. THE COURT: I appreciate that situation, but I am not going to put the record in such shape so that counsel can come in—— it is not a matter personally with you; you might be discharged overnight and we would find ourselves with another situation. We now have counsel who are prepared to try the case, and presumably the co-defendant is prepared to go to trial. MRS. KELLOGG: I am, your Honor. I am prepared to try the case, but *I would like a little more time.* I was not present at the time this case was set; the Public Defender represented me at that time, and the case was set for the 16th of June. However, I am ready to try the case. THE COURT: Well, our calendar is in such shape now a continuance of the matter would mean a continuance for a long period of time. I think these cases ought to be disposed of. In other words, there has been ample time to prepare these cases for trial. MRS. KELLOGG: Could your Honor set it a week hence? THE COURT: No, I cannot very well do that because of other cases on the calendar. MRS. KELLOGG: I am ready to go to trial, but I thought if there was any way I could assist counsel—— THE COURT: I will permit Mr. Warner to appear here as counsel for the defendant, associated with the Public Defender. On the day of trial I will permit the Public Defender to withdraw, but I am not going to make an order of substitution which is going to force a continuance upon the basis that Mr. Warner coming into the case now is not prepared and would not be prepared on Friday to try the case. *Obviously nobody can prepare a murder case in two days.* MR. WARNER: As far as I know, I will be ready for trial. I have talked with Mr. Robinson and he advises me he has some other cases that are pending that he would like to try on those days, that he was going

to have to make other arrangements in these cases—— I under-
stand he has continued them—— he would like to be relieved
of the case. THE COURT: Well, I will relieve him as soon as
the trial starts. MR. ROBINSON: If your Honor please, we
do not know whether we are supposed to go ahead and get
ready or not. THE COURT: You are still in the case; you are
under obligation to defend the client for whom you have been
appointed.'' The case was called on June 16, 1944, at which
time the court postponed the trial until June 19, 1944, because
of a congestion in the calendar and the public defender again
asked to be relieved from representing appellant because
Warner had been retained, to which the court again replied
that it would not allow a substitution to obtain a continuance
Warner asked for a continuance and the court stated: ''Your
motion or your contention is upon the basis that you person-
ally have not had time to prepare. That is because you just
have been very recently hired. It is not a question of whether
you are personally prepared. The question is whether the
defendant himself has had the case set for a sufficiently long
time after plea to enable preparation to be made. I am as-
suming the Public Defender has made all the preparations
the defendant indicated were necessary for his defense. MR.
WARNER: There are certain witnesses in North Hollywood
that possibly may be obtained. This defendant was drinking
in a bar with strangers and the Public Defender's office, be-
cause of the number of cases they have to try, have not had
time to seek these witnesses out. THE COURT: The Public
Defender has not made any motion for a continuance on the
ground he has not had time to prepare. MR. THOMAS [public
defender] : I will say, your Honor, I was speaking with Mr.
Matthews about it last week, *and said I thought we should
have more time to prepare if we were to stay in the case.*
He said he had a large number of witnesses, so I did not press
it further at that time. A further reason I did not press it
further at that time was because the defendant was talking
about securing other counsel. The case is, of course, a des-
perate case from the standpoint of the defendants, and I feel
that they should be given every opportunity to fully present
their defense. THE COURT: I think so too. But I am under
the impression a month and a half is quite ample time unless
a most unusual situation appears, and none does appear.
I, personally, have had a slight experience in the defense of
murder cases and the prosecution of murder cases. Not in-

frequently I have had to try cases on very much shorter notice than that. I think we all recall the Clara Phillips case. I had just one week to prepare that case for trial. MR. THOMAS: I am told by the District Attorney they have some thirty-three witnesses for the prosecution, which would indicate the scope of preparation and investigation required for this case. *I will say we have not, by any manner of means, contacted nor ascertained the nature of the testimony of those witnesses, what testimony we will have to meet.* THE COURT: I can see no grounds for a continuance at the present time other than the immediate calendar situation. By reason of the congested condition of the calendar the case is continued at this time until next Monday morning at 9 a. m. All witnesses ordered to return here at that time." On June 19, 1944, the trial was commenced. Warner was substituted for the public defender. Warner again asked for a continuance and was refused, the court stating: "I do not think so under the circumstances. The case has been pending for a sufficiently long time to provide for reasonable preparation. As I have stated previously, it may be a little more difficult for you to proceed, having been in the case only a short time, but the rule for continuance applies to the defendant and not to his counsel."

It is clear that the time allowed to Warner to prepare for trial was too short, considering the seriousness of the charge, the many witnesses called by the prosecution and the lack of opportunity to interview them, the possibility of uncovering other evidence, and the length of the record. The trial judge stated that the time was too short. It is also apparent from the foregoing quotation from the record that the public defender felt he had not made sufficient preparation inasmuch as he was expecting appellant to employ other counsel. Moreover he did not participate in the trial. Hence it is plain that no adequately prepared counsel was available to appellant. The majority opinion cites cases as to various periods of time being sufficient, but each case depends upon its own circumstances. Here the charge was of the most serious character and the trial judge stated the time was insufficient.

It should be equally clear that if the trial court abused its discretion the error was prejudicial and requires a reversal. True, from the record it appears that defense counsel Warner presented a vigorous defense, but it is impossible to appraise the result that may have flowed from a full investigation of

the case and the evidence available. It is aptly said in *Powell v. Alabama,* 287 U.S. 45, 58 [53 S.Ct. 55, 77 L.Ed. 158, 84 A.L.R. 527]: "Neither they nor the court could say what a prompt and thoroughgoing investigation might disclose as to the facts." In *People* v. *McNabb,* 3 Cal.2d 441 [45 P.2d 334], and *People* v. *White,* 137 Cal.App. 467 [30 P.2d 555], the charge was much less serious and there were not the same circumstances bearing upon the opportunity for preparation. Under the circumstances in the instant case the mere fact that the defense was vigorous is not enough to show lack of prejudice in the denial of the continuance. The shortness of the time in the light of the circumstances here presented indicates prejudice to appellant.

We thus have a situation in which neither the public defender, nor counsel of defendant's own choice, were prepared to try the case, and if the public defender were or should have been prepared he did not participate in the trial. He was relieved of his representation of appellant. Appellant was first denied the right to have counsel of his own choice unless the public defender also acted or unless no continuance for preparation would be asked. Having private counsel was of little value to appellant under those circumstances. Counsel not having an opportunity to prepare is tantamount to no counsel. (*Powell* v. *Alabama, supra.*) And a defendant in a criminal case is entitled to select and engage private counsel. (*In re Ades,* 6 F.Supp. 467; *McCleary* v. *State,* 122 Md. 394 [89 A. 1100]; *People* v. *Price,* 262 N.Y. 410 [187 N.E. 298]; *Glasser* v. *United States,* 315 U.S. 60 [62 S.Ct. 457, 86 L.Ed. 680].)

The majority opinion argues, however, that the policy of the state to have speedy trials and expedite the administration of justice must be given consideration and that a defendant should not be permitted by last minute changes of counsel to obtain continuances and thwart that policy; that in the instant case appellant had ample time to procure private counsel. The controlling principles that must be observed in such cases are stated in *Glasser* v. *United States, supra,* at page 69: "The guarantees of the Bill of Rights are the protecting bulwarks against the reach of arbitrary power. Among those guarantees is the right granted by the Sixth Amendment to an accused in a criminal proceeding in a federal court 'to have the Assistance of Counsel for his defense.' *'This is one of the safeguards . . . deemed necessary to insure fundamental*

*human rights of life and liberty'* and a federal court cannot constitutionally deprive an accused whose life or liberty is at stake of the assistance of counsel. *Johnson* v. *Zerbst,* 304 U.S. 458, 462, 463, 58 S.Ct. 1019, 1022, 82 L.Ed. 1461. Even as we have held that the right to the assistance of counsel is *so fundamental* that the denial by a state court of a reasonable time to allow the selection of counsel of one's own choosing, and the failure of that court to make an effective appointment of counsel, may so offend our concept of the basic requirements of a fair hearing as to amount to a denial of due process of law contrary to the Fourteenth Amendment, *Powell* v. *Alabama,* 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158, 84 A.L.R. 527, so are we clear that the 'Assistance of Counsel' guaranteed by the Sixth Amendment contemplates that such assistance be *untrammeled and unimpaired by a court order* requiring that one lawyer shall simultaneously represent conflicting interests. If the right to the assistance of counsel means less than this, a valued constitutional safeguard is substantially impaired.

''To preserve the protection of the Bill of Rights for hard-pressed defendants, *we indulge every reasonable presumption* against the waiver of fundamental rights. *Aetna Insurance Co.* v. *Kennedy,* 301 U.S. 389, 57 S.Ct. 809, 81 L.Ed. 1177; *Ohio Bell Telephone Co.* v. *Public Utilities Commission,* 301 U.S. 292, 57 S.Ct. 724, 81 L.Ed. 1093. . . .

''*Upon the trial judge rests the duty of seeing that the trial is conducted with solicitude for the essential rights of the accused.* Speaking of the obligation of the trial court to preserve the right to jury trial for an accused Mr. Justice Sutherland said that such duty 'is not to be discharged as a mere matter of rote, but with sound and advised discretion, with an eye to avoid unreasonable or undue departures from that mode of trial or from any of the essential elements thereof, and *with a caution increasing in degree as the offenses dealt with increase in gravity.'* *Patton* v. *United States,* 281 U.S. 276, 312, 313, 50 S.Ct. 253, 263, 74 L.Ed. 854, 70 A.L.R. 263. The trial court should protect the right of an accused to have the assistance of counsel. 'This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused. While an accused may waive the right to counsel, whether there is a proper waiver should be clearly determined by the trial court, and it would be fitting

and appropriate for that determination to appear upon the record.' *Johnson* v. *Zerbst*, 304 U.S. 458, 465, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461." (Emphasis added.) Likewise, by analogy in the instant case, we should indulge in the presumption that there was no scheme or plan by appellant to secure a postponement of the trial by the device of changing counsel. Otherwise the fundamental right is whittled away with the knife of a mere supposition that persons accused will impose upon the courts. Prior to June 14, 1944, appellant was endeavoring to obtain funds from relatives to pay the fee of an attorney to be engaged by him for his defense. Presumably the chosen counsel appeared at the earliest opportunity to obtain a continuance, two days before the trial date. There is no showing or indication of bad faith on the part of either appellant or his counsel Warner. The public defender joined in the proceeding and was apparently satisfied with the endeavor of appellant to obtain counsel. The prosecuting attorney made little protest and advanced a feeble reason why a continuance would not be proper. The court in remarking that because of the many cases scheduled for trial in the future, the trial might be delayed a long time, may well have been correct, but the fundamental right here involved should not swing on the congestion of the courts for which appellant is not to blame. By virtue of the same reasoning his attorney could be limited to two hours for preparation.

I think it is obvious that the trial court was not sufficiently solicitous in protecting the constitutional right of the appellant to the assistance of counsel as that right is defined in the Glasser and Powell cases. It used as a weapon to prevent appellant from having a counsel of his own selection, the threat of either not making such a choice or taking an unprepared counsel by the device of denying a continuance, all upon the supposition that appellant was attempting to obtain an unjustified delay in the trial. The policy to expedite the administration of justice must be considered in the light stated in *Williams* v. *Kaiser*, 323 U.S. 471, 476 [65 S.Ct. 363, 89 L.Ed. 398] : "Prompt and expeditious detection and punishment of crime are necessary for the protection of society. But that may not be done at the expense of the civil rights of the citizen. Law enforcement need not be inefficient when accommodated to the constitutional guarantees of the individual." And in *Powell* v. *Alabama, supra,* at page 59: "The prompt disposition of criminal cases is to be commended and encour-

aged. But in reaching that result a defendant, charged with a serious crime, must not be stripped of his right to have sufficient time to advise with counsel and prepare his defense." There is undoubtedly large discretion vested in the trial court in passing upon requests for continuances, but in light of what I have said and the presence of the fundamental issue of right to counsel, there was clearly an abuse of discretion in this case.

There is nothing in the cases of *Betts* v. *Brady,* 316 U.S. 455 [62 S.Ct. 1252, 86 L.Ed. 1595], and *Avery* v. *Alabama,* 308 U.S. 444 [60 S.Ct. 321, 84 L.Ed. 377], which compels a contrary result. In the Avery case it is stated that a mere denial of a continuance alone does not deny a person the right to assistance of counsel. It is there conceded that "But the denial of opportunity for appointed counsel to confer, to consult with the accused and to prepare his defense, could convert the appointment of counsel into a sham and nothing more than a formal compliance with the Constitution's requirement that an accused be given the assistance of counsel. The Constitution's guaranty of assistance of counsel cannot be satisfied by mere formal appointment." Moreover the court laid stress on the point that the scene of the crime was a rural community, contrary to the case at bar, where investigation would be simple, and stressed that the policy of Alabama should be given weight and consideration. We believe the policy of this court for this state should be as above stated. Likewise in the Betts case the court was concerned with the application of the Fourteenth Amendment to state court proceedings and merely said that in that case there was not a lack of due process of law. I am here merely holding that prejudicial error was committed.

There is language in *People* v. *Shaw,* 46 Cal.App.2d 768 [117 P.2d 34], quoted in *People* v. *Whinnery,* 55 Cal.App.2d 794 [131 P.2d 33], to the effect that courts should be zealous in guarding the rights of accused but: "To hold that a defendant charged with a crime has an absolute right to counsel of his own selection, with unlimited right to insist upon continuances of his trial, would be subversive of the prompt administration and execution of the laws—— upon which depends largely their effectiveness. It is at once apparent that the trial court must in the nature of things have some control over such matters, to the end that judicial business may be dispatched in an orderly manner." But in the Shaw and

Whinnery cases the counsel who was to be substituted out of the case participated therein, and there the circumstances were not the same as here.

The majority opinion relies upon section 1050 of the Penal Code the material parts of which provide: "The court shall set all criminal cases for trial for a date not later than thirty days after the date of entry of the plea of the defendant. No continuance of the trial shall be granted except upon affirmative proof in open court, upon reasonable notice, that the ends of justice require a continuance. No continuance shall be granted for any longer time than it is affirmatively proved the ends of justice require. Whenever any continuance is granted, the court shall enter in its minutes the facts proved which require the continuance." But in the instant case no objection was made by the prosecution as to the procedure followed in attempting to obtain the continuance and the court accepted the claim of lack of time for preparation as true and did not mention or make any point that a better showing should have been made of any facts pertinent to the subject, and ordered the case to go to trial with an admittedly unprepared counsel without any association or assistance by the former counsel. Under these circumstances, keeping in mind the fundamental right involved, I do not believe that the position taken in the majority opinion is meritorious. Certainly the policy stated in that section cannot be expanded to impair that sacred right.

In order to sustain the arbitrary action of the trial judge in this case the majority opinion has glossed over the poignant circumstances which stand out clearly in the record hereinabove quoted. This record discloses that the public defender was not prepared to try the case at the time Warner was employed, and he so informed the court. Warner would have had two days to prepare if the substitution had been allowed on June 14th and the case had gone to trial on the 16th. The court did not allow the substitution on the 14th so both Warner and the public defender were uncertain as to what either should do. In fact the court never ruled on the motion made by the public defender on June 14th to substitute Warner in his place, but stated that he would permit Warner to appear as counsel for defendant associated with the public defender and on the day of trial he would permit the latter to withdraw. The case could not go to trial on June 16th and was continued to June 19th when the trial commenced.

At that time the public defender made a motion to substitute Warner in his place and that he be permitted to withdraw. This motion was granted. Warner had a total of four days, which included a Saturday and Sunday, to prepare for trial. The public defender having announced in open court that he was not prepared to try the case could obviously have been of little assistance to him even if he had remained in the case. In the face of these facts, to say that appellant was accorded his constitutional right to be represented by counsel of his own choice and afforded a reasonable opportunity to prepare for trial, should tax the credulity of anyone who has had experience in the trial of criminal cases.

While appellant may have participated in the commission of a heinous and fiendish crime and the punishment meted out to him by the judgment and sentence may be in accord with the popular concept of justice, I cannot yield to the concept, which is the basis of the majority opinion, that judicial expediency may be substituted for constitutional guarantees. Decisions such as this make these guarantees meaningless.

In my opinion the judgment should be reversed.

EDMONDS, J.—I concur in the conclusion that the judgment should be reversed because of the violation of the appellant's constitutional rights in the ruling denying a continuance of the trial.

Appellant's petition for a rehearing was denied October 10, 1946. Carter, J., voted for a rehearing.