[Crim. No. 3359.   First Dist., Div. Two.   Nov. 4, 1957.]

THE PEOPLE, Respondent, v. JOHN ROBERT
HARRINGTON, Appellant.

William L. Ferdon for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, Raymond M. Momboisse, Deputy Attorney General, Thomas C. Lynch, District Attorney (San Francisco), and Philip J. Hanley, Deputy District Attorney, for Respondent.

DOOLING, J.—Appellant was found guilty by a jury of burglary, rape and robbery committed on or about October 16, 1955, and of burglary and attempted rape committed on or about May 31, 1956.

The victim of the first set of crimes, a young unmarried woman, was on October 16, 1955, living alone in an apartment adjacent to the apartment building in which appellant was living with his wife. On that night, having undressed and donned pajamas, she discovered a man hiding in her closet. He was armed with a table knife which he had found in the apartment. He asked for money and threatened to kill her if she did not keep quiet. She pointed out her purse and he took $7.00 from it. He directed her to go into her bedroom and forced her onto her bed and there accomplished an act of intercourse with her. At all times he continued to hold the knife in one hand. Before leaving he demanded more money but when she told him that she did not even have carfare he left 50 cents, wiped off the knife and left through the bed-

room window. A scream and a thud were heard by a visitor to another apartment in the building. No fingerprints other than those of the occupant were found in the apartment and no footprints were discovered in the area outside the bedroom window. Medical examination of the victim disclosed evidence of recent intercourse.

The second victim, also a young unmarried woman, lived alone in the same apartment building as appellant. On the night of May 31, 1956, she was awakened by a hand on her shoulder. She discovered appellant, completely nude, standing over her. He placed his hand on her throat and forced her back on the bed and lay partly on top of her. He attempted to remove her pajamas and told her that he would not hurt her. She succeeded in escaping and ran to the street. As she left the room she seized a robe, which admittedly belonged to appellant, and appellant's slippers were found in her apartment. Appellant was arrested in his apartment shortly afterwards.

Appellant admitted that the robe and slippers found in the second apartment were his but testified that he had been drinking heavily that evening and had no recollection of entering the apartment or of anything that had occurred therein. He did have a recollection, according to his testimony, of looking through the apartment window and seeing the young lady asleep in her bed. There was testimony that while appellant had been drinking rather heavily that night he conversed and answered questions intelligently and in the opinion of the witnesses did not seem to be intoxicated.

Appellant denied that he was the man who had entered the first apartment on the night of October 16, 1955, but the victim of the crimes committed that night positively identified appellant as the perpetrator of them. She testified that after his arrest for the later crimes she saw his picture in a newspaper and immediately recognized him even before reading the news story. She testified that he was wearing a light blue suit. There was testimony that appellant did not own a light blue suit and that on the night in question appellant had been wearing a dark blue suit. Appellant's wife testified that on October 16, 1955, she was pregnant and had difficulty in sleeping but had no knowledge of appellant leaving their apartment that night.

The only claim of error is alleged misconduct of the prosecutor in argument, which appellant urges must be considered

prejudicial because, with the two sets of charges being tried together a greater burden was cast on appellant since the jury would inevitably be influenced in deciding one set of issues by the cumulative effect of the evidence offered in proof of the other set of issues.

The first instance of asserted misconduct occurred in the prosecutor's opening argument, in which he stated (referring to the lack of appellant's fingerprints): "Well, it happens all the time. I mean, we are not always so fortunate. In fact, it is a rare occasion when we do have fingerprints. . . ." This was a statement of facts not in evidence in violation of the rule of *People* v. *Kirkes,* 39 Cal.2d 719 [249 P.2d 1]. However no objection was made and it is only where the harmful effect of the misconduct could not be obviated by an appropriate instruction that an appellate court will consider such a question in the absence of any objection in the trial court. (*People* v. *Hampton,* 47 Cal.2d 239 [302 P.2d 300].) We are satisfied that the quoted language was not of such a character that a proper instruction would not have cured any possible harmful effect on the jury.

The next instance involved the following statement: "Mr. Ferdon makes mention that there was no checking of her story. Inasmuch as he has seen fit to say that, I'll tell you this, and Mr. Ferdon, I believe, will not doubt my word: That, of course, her story was checked. Do you think that a young 18-year-old girl—I don't mean that I'm omniscient, or wise, or anything of the type, but do you think an 18-year-old girl can take a completely—completely fabricated story, and run it by Police Inspectors and members of the District Attorney's Office, if the girl had spun the whole thing from whole cloth? Do you think that if there were any doubts concerning her story, or if we did not believe it——"

Appellant's attorney assigned this as misconduct and the district attorney stated: "I'll agree, your Honor; I'll drop the thought." It is urged by appellant that this was prejudicial misconduct in that the district attorney stated a fact not supported by evidence—that the story was checked. Also, this was a statement of belief, prior to trial, by the district attorney and his associates, in appellant's guilt.

Appellant contends this error could not be cured and the remarks of the trial court, designed to cure the error, only deepened it.

The court said:

"You understand, ladies and gentlemen of the jury, that

it is not within the province of any counsel to comment, and lead you to believe that he knows facts that aren't before you, and, naturally, that would be wrong. You decide things only on the facts that are brought before you here in the courtroom, so any intimation that Mr. Hanley knows any facts— I don't know whether he does or not, but, if he does, I instruct you to disregard any reference to them by Mr. Hanley, and block it out of your minds, any thought that he may be persuasive because he knows facts that you do not know. His business is to discuss only the facts that are here before you.''

While the trial judge might well have omitted the comment: "I don't know whether he does or not" (i.e., know any facts not in evidence) the court's final instruction was explicit: "I instruct you to disregard any reference to them. . . .'' We must assume that the jury obeyed this direction and the remarks were not of an inflammatory character nor such as not to be cured by this explicit instruction to the jury. Following this admonition the prosecutor himself acknowledged the impropriety of these remarks and concluded: "I am not intimating that I have any knowledge of anything more than has appeared here, understand that; and, as I know you understand, you are the exclusive judges of the evidence in this case. . . .'' We can not believe that this incident resulted in any prejudice to appellant.

The third instance of alleged misconduct concerned the following statement:

"You know how she—you know how she identified the man, and I will say this, and this is—and this, I believe, is proper, in view of the inferences raised: You may not know it, but Mr. Ferdon knows it, that [the witness] identified that man in that fashion on that particular day of October 17th."

Defense counsel objected and assigned these remarks as misconduct. The judge stated:

"Now, you have heard the colloquy, ladies and gentlemen, . . . I accept Mr. Ferdon's statement as true, that he doesn't know whether the lady identified the man or not. Mr. Hanley now says he means 'description.' I do recall there was some testimony by the girl as to description. Disregard the colloquy between counsel, and you go ahead, Mr. Hanley."

There was no evidence that the witness described or identified her assailant on October 17, 1955. Whatever confusion may have existed in the minds of the jurors as a result of these remarks the true state of the record was later made perfectly clear to them. The jury during their deliberations

returned to the courtroom and asked to see the testimony which indicated when the witness first gave her description of her assailant. The Court informed them: "literally, there is no evidence in the record which shows that." It is extremely unlikely that the jury in their deliberations thereafter could have given any weight to the prosecutor's assertion to the contrary.

The last assignment concerns a remark by the prosecutor: "Mr. Ferdon well appreciates that in rape cases . . . he has tried many in his years as a Public Defender."

Appellant's counsel, without asking for any action by the court, denied that he had tried more than three or four such cases. The incident was inconsequential and could not have resulted in prejudice.

On the whole record we find no prejudicial misconduct.

Judgment and order denying new trial affirmed.

Kaufman, P. J., and Draper, J., concurred.