[Crim. No. 4161. First Dist., Div. One. Jan. 10, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. JAMES C. JUSTICE, Defendant and Appellant.

George E. McKerrow, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, John S. McInerny and Eric Collins, Deputy Attorneys General, for Plaintiff and Respondent.

SULLIVAN, J.—The defendant James C. Justice was charged in an information in three counts: In Count I with the unlawful entering of an inhabited dwelling house with intent to commit assault with a deadly weapon in violation of section 459 of the Penal Code; in Count II with the unlawful entry of an inhabited dwelling house with intent to commit assault by means of force likely to produce great bodily harm in violation of section 459 of the Penal Code; and in Count III with assault by means of force likely to commit great bodily harm in violation of section 245 of the Penal Code. A jury found the defendant not guilty on Counts I and II and guilty on Count III. He has appealed from the judgment of conviction and from the order denying his motion for a new trial.

Defendant's notice of appeal was filed on February 26, 1962, and thus after the effective date of the 1961 amendment to section 1237 of the Penal Code (Stats. 1961, ch. 850, § 5, in effect September 15, 1961) abolishing an appeal from an order denying a motion for new trial in criminal cases except in certain circumstances not here applicable. The order denying defendant's motion for a new trial is therefore not an appealable order and the attempted appeal therefrom must be dismissed. (*People* v. *Simons* (1962) 208 Cal.App.2d 83, 84 [25 Cal.Rptr. 57].)

Since the defendant does not question the sufficiency of the evidence to support the judgment, we need not set forth the facts of the commission of the offense in any extensive detail. On the evening of October 21, 1961, the defendant and one Mrs. Dorothy Davis attended a party in Menlo Park. There was testimony that it was a "drinking party." Later in the evening the defendant, Mrs. Davis and a man named Morrissey left the party and went to Mrs. Davis' apartment which was in the vicinity. There a quarrel developed between Mrs. Davis and the defendant over an incident occurring at the party. Mrs. Davis told both men to leave and they did. However, after they were outside the defendant told Morrissey to go home and turned back to reenter the apartment. At that point Mrs. Davis closed and locked the door, informing the defendant that she did not want him inside. Finding the door locked, the defendant broke a window of the apartment which

was at street level and climbed in through the window. Thereupon he administered a severe beating to Mrs. Davis during which he knocked her down many times, beat and kicked her, and twice dragged her by her feet out onto the grass in front of the building. According to the victim, she was beaten off and on thereafter over a period of two and a half hours and finally rendered senseless. The defendant broke and damaged furniture and cut the victim's clothing with a razor blade. Strangely enough, the defendant then fell asleep in the victim's bedroom and remained there until early the next morning. At that time he was apparently awakened by a person who roomed in the apartment and finally left. Mrs. Davis then had some friends call the police.

The defendant contends here that (1) the court below by refusing a continuance of the trial deprived him of his right to effective counsel; (2) the court erred in permitting the reading into the record of a portion of the testimony at the preliminary hearing from an unauthenticated transcript; (3) the prosecutor committed prejudicial misconduct; and (4) the court misled the jury in attempting to clarify certain instructions. We have concluded that none of these contentions have merit and that the judgment should be affirmed.

The information was filed herein on November 6, 1961. Upon the arraignment of the defendant on November 14, 1961, the court appointed Mr. Sheldon Durham attorney for the defendant. On December 8, 1961, the defendant entered a plea of not guilty to all counts and trial was set for January 31, 1962.

On the morning of the trial and before the case was called, the defendant informed the trial judge in chambers that he had made arrangements for private counsel but that such counsel, Mr. McFeeley, had not appeared. In the defendant's presence, the judge telephoned Mr. McFeeley's office but there was no answer. At the defendant's request, the judge then continued the case until the afternoon. Upon the granting of the continuance, Mr. Durham requested to be relieved as defendant's counsel but the court said "No, because we are going to go to trial at 2 o'clock, and if he is not here, you will have to stay. You have had troubles, apparently, getting cooperation with this client in the past, and you should have come into Court a week or so ago and asked to be relieved."

During the morning the court telephoned Mr. McFeeley's office again and left the court's telephone number with an answering service. Finally, just before the case was called

in the afternoon, the clerk telephoned such office again and upon an office associate answering, left word with such person that the defendant's trial could not be further postponed. Immediately thereafter, proceedings were resumed in chambers, at which time the trial judge apprised the defendant in the presence of his court appointed counsel as to what had transpired and made clear to him that the trial would begin forthwith. The following colloquy then took place: "THE COURT: . . . I'm not disposed to inconvenience the Court or the jurors or anybody else any longer. Now, I understand you do not want Mr. Durham to represent you. MR. JUSTICE: We don't seem to agree on the way to run things, so I think it would be best——THE COURT: Do you think that it would be better that you want to represent yourself, is that right? MR. JUSTICE: It would be giving me time with the condition that I would be able——THE COURT: If Mr. McFeeley received a retainer fee and knew the case was up for trial today, and I'm not sure he did, then he is in contempt of Court for not being here. If he didn't receive a fee, why then you're not entitled to any continuance.

"Now, the jurors have been summoned. I'm going to start proceeding a trial. I am going to go out there and try the case at 2:00 o'clock, one minute from now. If you want to take over your own defense that's fine. If you want Mr. Durham, who is a recognized member of the bar in Redwood City, to conduct your defense, that's fine. In any event, Mr. Durham is designated as Court appointed to at least sit next to the defendant, and do his best to represent you. MR. DURHAM: All right. Is that what you desire, Mr. Justice, to conduct your case yourself, until Mr. McFeeley shows up in Court; that is your desire to do that? This is because we are not in agreement. MR. JUSTICE: Yes, Sir. THE COURT: Well, that's fine, but we are not waiting for Mr. McFeeley. If he shows up any time, we will let him participate."

The case was then called and both the prosecution and the defendant personally answered ready. At this point the judge received a telephone call from an office associate of Mr. McFeeley forwarding a message from the latter attorney. This was to the general effect that although the defendant had talked to Mr. McFeeley about the case and had left a transcript with him, no employment had ever been agreed upon, no fee paid and the transcript had been returned to the defendant by the attorney. Mr. McFeeley confirmed this by a letter to the court which was received the following day. In the letter

the attorney further stated that he did not know the defendant's case had been set for trial on January 31, 1962.

The granting of a request made by a defendant for the continuance of his trial rests within the discretion of the trial court, and in the absence of an abuse of discretion and a showing of prejudice, a denial of the continuance cannot serve as the basis for the reversal of a judgment of conviction. (*People* v. *Dorman* (1946) 28 Cal.2d 846, 850 [172 P.2d 686]; *People* v. *Costa* (1956) 145 Cal.App.2d 445, 447 [302 P.2d 634]; *People* v. *Shaw* (1941) 46 Cal.App.2d 768, 773-775 [117 P.2d 34]; *People* v. *Jewett* (1948) 84 Cal.App.2d 276, 279-281 [190 P.2d 330]; see generally 14 Cal.Jur.2d, Criminal Law, § 155, pp. 391-393; 66 A.L.R.2d 298.) Section 1050 of the Penal Code governing the setting for trial and continuances[1] thereof reflects a legislative policy enjoining the prompt disposition of criminal cases. (*People* v. *Dorman, supra.*) Where a continuance is refused therefore, the question presented is whether the trial court abused its discretion in determining that there was no affirmative showing that the ends of justice required a continuance. (*People* v. *Dorman, supra.*) Each case must be determined by its own particular facts. (*People* v. *Shaw, supra.*)

The record before us shows initially that the court at the defendant's request continued the case until 2 p. m. of the day set for trial so that the defendant could make inquiries as to the whereabouts of Mr. McFeeley, who he claimed was his new counsel. This was the extent of the continuance and apparently of the request. It subsequently developed that Mr. McFeeley never agreed to represent the defendant and did not even know of the date of trial. In view of the information later furnished the court, it is difficult to understand how the defendant could believe in good faith that he had made arrangements for new counsel.

It is clear from the facts heretofore set forth by us that the defendant not only waived his right to counsel (*In re*

---

[1] Section 1050 states in relevant part: "The welfare of the people of the State of California requires that all proceedings in criminal cases shall be set for trial and heard and determined at the earliest possible time, and it shall be the duty of all courts and judicial officers and of all prosecuting attorneys to expedite such proceedings to the greatest degree that is consistent with the ends of justice. In accordance with this policy, criminal cases shall be given precedence over, and set for trial and heard without regard to the pendency of, any civil matters or proceedings. No continuance of a criminal trial shall be granted except upon affirmative proof in open court, upon reasonable notice, that the ends of justice require a continuance. . . ."

*Connor* (1940) 16 Cal.2d 701, 706 [108 P.2d 10]) and agreed to conduct his own defense, but accepted an arrangement therefor under which Mr. Durham would remain in an advisory capacity. At no time did the defendant make a motion for a continuance in order to obtain other counsel. In fact, except for the first request for time to locate Mr. McFeeley, no motion for a continuance on any grounds was made by the defendant or his court appointed counsel.

Defendant here concedes that he agreed to defend himself but claims that he "impliedly requested a continuance in order to prepare his defense." The record is bare of any such request or of any statements from which it can reasonably be implied. On the contrary, the record shows that when it was finally brought to light that Mr. McFeeley had not agreed to act as defendant's counsel (a development which apparently provoked neither objection nor surprise on defendant's part), the defendant went forward with the defense of the case with Mr. Durham acting in an advisory capacity.

The record shows that the defendant personally cross-examined witnesses for the prosecution and conducted the direct examination of the only defense witness other than the defendant himself. Mr. Durham interposed several objections during the trial and conducted the direct examination of the defendant himself, who apparently found nothing objectionable in such actions on Mr. Durham's part. The record does not disclose who made the closing argument for the defense. Naturally the record would not disclose Mr. Durham's conferences with and advice to the defendant during the trial, but it is a fair construction of the record as a whole that Mr. Durham at all times carried out his professional duties within the circumscribed limits that the defendant himself had fixed.

Thus, in summary, the defendant initially had the assistance of counsel and, after having elected to conduct his own defense, continued to have assistance of counsel in an advisory capacity, indeed, as the record shows, in some parts of the trial in more than an advisory capacity. It is also to be noted that Mr. Durham represented the defendant at the preliminary hearing. Defendant attempts to discount all of this by arguing that Mr. Durham appeared at the trial with the expectation of being relieved of his appointment and was therefore unable to effectively advise the defendant during the trial. The record however does not support this contention. It is also significant that at no time did Mr. Durham give any indication to the court that he was unprepared because he had expected to be

discharged and at no time did he move for a continuance on the grounds that he required time to prepare for the trial.

Defendant relies principally on *People* v. *Simpson* (1939) 31 Cal.App.2d 267 [88 P.2d 175]. There, two days before the trial, the public defender was relieved as court appointed counsel for the defendant at the request of the defendant because of differences occurring between them. The defendant informed the court that he had made arrangements for private counsel and requested a continuance. The court stated that it would pass on the continuance on the day set for trial. On that date the new attorney informed the court that a continuance would be required for proper preparation of the case and upon refusal of the same, declined to become attorney of record. The cause was then continued until the afternoon at which time the defendant, appearing without counsel, again requested a continuance for the purpose of obtaining counsel and securing the attendance of witnesses. The continuance was refused and the trial proceeded. The defendant had no assistance of counsel, conducted no cross-examination, produced no evidence in his own defense and made no closing argument. Judgment of conviction was reversed because reasonable time had not been allowed new counsel to prepare for trial and the defendant was compelled to stand trial without counsel and after the above brief period for preparation.

However the instant case is distinguishable from *People* v. *Simpson*. In *Simpson* the court first relieved the defendant's court appointed counsel, thus leaving the defendant without any counsel at all. Then, although only two days remained before trial, the court not only denied a continuance to the new counsel as a result of which such counsel refused to go on record, but also, in this situation denied the defendant a continuance for the purpose of seeking other counsel. The defendant in *Simpson* did not at any time waive his right to counsel and did not agree, or even attempt, to conduct his own defense. In the case before us, court appointed counsel was not relieved; no motion for continuance was made either by any new counsel (it developed there was none) or by the defendant either to obtain new counsel or to prepare for trial. Here, the defendant elected to conduct his own defense and was assisted throughout the trial by court appointed counsel. (Cf. *People* v. *Jewett, supra,* 84 Cal.App.2d 276, 279-281.) Under the above circumstances, the defendant cannot claim that he was prejudiced.

We turn to the defendant's second contention on

appeal. Mrs. Davis, the complaining witness, died of a cardiac ailment before the trial. However, she had testified at the preliminary hearing. The prosecution therefore, as part of its case in chief, produced the original transcript of the testimony given at the preliminary hearing and over the objection of Mr. Durham read to the jury and into evidence the testimony of Mrs. Davis. Mr. Durham's objection was that "the transcript can only be authenticated by the Court Reporter." After such testimony had been read into evidence, the court admitted the portion of the transcript so read as documentary evidence, again over Mr. Durham's objection.

Defendant claims it was error to permit the reading into the record of such testimony from an "unauthenticated" transcript. The transcript however, which is before us, shows a certificate by the official shorthand reporter that it is a full, true and correct transcript of the proceedings and testimony at the preliminary hearing. It also shows that it was filed with the county clerk. Defendant's objection is not that the transcript was without such certificate or that the certificate was defective. Nor is any question raised as to the identity of the official reporter who certified the transcript. The transcript was thus properly authenticated by the certificate of the reporter. Since this was not questioned, there was no requirement that the reporter appear as a witness at the trial to authenticate the transcript again. (*People* v. *Buckley* (1904) 143 Cal. 375, 380-383 [77 P. 169]; *People* v. *Pembroke* (1907) 6 Cal.App. 588, 591 [92 P. 668].) The case of *People* v. *Redston* (1956) 139 Cal.App.2d 485 [293 P.2d 880], relied upon by defendant, is not in point.

In addition to the foregoing we observe that prior to the reading of the transcript and after Mr. Durham had objected to it, the defendant personally stated to the court: "We will certify to the correctness of the transcript."

 Defendant's next contention asserts prejudicial misconduct on the part of the prosecutor. Because the defendant several times during the trial had referred to himself as missionary or reverend, the prosecutor during cross-examination of the defendant inquired as to which he was. This produced a long answer from the defendant reciting his activities with various negro churches and religious groups. The following then took place. "Q. Isn't it a fact, Mr. Justice, that you are what is known as a religious con-man, soliciting—— Mr. DURHAM: Your Honor, this is prejudicial misconduct. THE COURT: The question is stricken—the jury is instructed to

disregard the question.'' The foregoing is the only instance of alleged misconduct charged by the defendant. It was a single, brief incident, promptly dealt with by the court which, upon the objection of Mr. Durham, on its own motion ordered the question stricken and instructed the jury to disregard it. The language used was improper. However, under the circumstances, we do not believe that the misconduct of the prosecutor was of such a nature as to have been incurable under the prompt and direct instruction of the court. We must assume that the jury followed the court's instruction and we are of the view that it was sufficient to safeguard the defendant's rights. (*People* v. *Rice* (1928) 90 Cal.App. 590, 593 [266 P. 295]; *People* v. *Harrington* (1957) 154 Cal. App.2d 857, 861 [317 P.2d 161].) Moreover, the record before us contains abundant and overwhelming evidence of the defendant's guilt. In the light of the entire record, it does not appear that any different verdict would have been probable, if the question had not been asked. (*People* v. *Watson*, (1956) 46 Cal.2d 818, 836 [299 P.2d 243]; *People* v. *Lyons* (1958) 50 Cal.2d 245, 265 [324 P.2d 556].)

Finally the defendant contends that the court's clarification of certain instructions misled the jury. The jury, having retired to deliberate, returned to court requesting further instructions ''on what constitutes assault and the lesser included offense under that. . . .'' During the court's explanation of assault and aggravated assault the following colloquy occurred: ''A JUROR: Could you differentiate between, in law, which is a felony assault and a misdemeanor assault? THE COURT: That is a good question. A felony is a crime punishable by imprisonment in the State Prison or by death; *and, of course, that's not here involved.* All other crimes are misdemeanors. Does that explain it to you?'' (Italics added.)

The record shows that the court had previously instructed the jury that they might find the defendant guilty of any lesser included offense if in their judgment the evidence supported such a verdict and that the offense of assault by means of force likely to produce bodily harm charged in Count III necessarily included the lesser crime of assault.

Defendant argues that when the court used the words italicized above, it in effect told the jury that a *felony* was not involved and that consequently the jury believed when they returned a verdict of guilty on Count III that they were merely finding the defendant guilty of simple assault, a mis-

670

demeanor. This contention is farfetched and without merit. It is clear to us that the italicized language refers to ''death'' penalty and not to the word felony and that the court observed that the crime with which the defendant was charged did not involve the death penalty. This is further apparent from the use of the words ''of course.'' Whether the jury has been properly instructed is not to be determined from a consideration of parts of an instruction or of merely particular instructions, but from the entire charge of the court. (*People* v. *Monteverde* (1952) 111 Cal.App.2d 156, 168 [244 P.2d 447]; *People* v. *Hunter* (1956) 146 Cal.App.2d 64, 67 [303 P.2d 356].) From an examination of the instructions as a whole, we cannot say that the jury was misled in the instant case.

The attempted appeal from the order denying defendant's motion for a new trial is dismissed. The judgment is affirmed.

Bray, P. J., and Molinari, J., concurred.