[Crim. No. 5551. First Dist., Div. One. Mar. 30, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. OTIS EVERETT BUTLER, Defendant and Appellant.

Roger P. Noorthoek for Defendant and Appellant.

Thomas C. Lynch, Attorney General, John T. Murphy and Anthony A. Cuomo, Deputy Attorneys General, for Plaintiff and Respondent.

ELKINGTON, J.—A jury found the defendant Otis Everett Butler guilty of violating Penal Code sections 288 (lewd and lascivious conduct) and 288a (oral copulation). He appeals from the judgment entered thereupon.[1]

The People's evidence, which we must view in the light most favorable to them following a guilty verdict (*People* v. *Sweeney* (1960) 55 Cal.2d 27, 33 [9 Cal.Rptr. 793, 357 P.2d 1049]; *People* v. *Caritativo* (1956) 46 Cal.2d 68, 70 [292 P.2d 513], *cert. denied*, 351 U.S. 972 [100 L.Ed. 1490, 76 S.Ct. 1042]; *People* v. *Dail* (1943) 22 Cal.2d 642, 650 [140 P.2d 828]), shows that on June 8, 1965, in the late afternoon or early evening, the victim of the crimes charged, Darrell F. (10), his sister Judy (9), Steven M. (9), Tonnet K. (6), Angel M. (5) and Mary K. (4), were playing in a driveway adjacent to defendant's home. The victim, Darrell F., lived four houses up from the Butler home.

The defendant was known to all the neighbors as "grandpa" and is called by that name throughout the record before us. It is stipulated that the defendant is more than 10 years older than the alleged victim. (Pen. Code, § 288a.)

While they were playing the defendant invited the children to come in and indicated that he would give them some candy. He evidently made it a practice to do this. The children entered the house at which time the defendant stated that the candy was in his bedroom and for them to go there and get it. They complied. Evidently there was candy in the bedroom but the defendant had more nefarious endeavors in mind. According to the victim Darrell F., after they had entered defendant's bedroom "he [the defendant] unloosened his belt and pulled down his zipper." Then he took out his "thing," grabbed the victim's and Steven M.'s hands, put them on his penis and caused them to rub and pet it. Butler then put the victim on his bed in a reclining or prone position, put his arms across the victim's chest and his knees on his legs thereby holding him down and committed an act of oral copulation upon him. The victim's pants were left on, the defendant merely pulled down the zipper and sucked his "thing" for only a minute or so when he heard the victim's mother yelling; whereupon he ordered the children to get out. Steven M., Judy F., Tonnet K., Mary K. and Angel M. were evidently all present when the crimes charged took place.

---

[1]The defendant has also filed a separate notice of appeal from an order denying his motion for new trial. Such order is nonappealable and the attempted appeal therefrom must be dismissed. (*People* v. *Justice* (1963) 211 Cal.App.2d 660, 662 [27 Cal.Rptr. 465].)

The foregoing facts were elicited and corroborated in the course of the People's case by the testimony of Darrell F., Judy F., and Steven M., all of whom were percipient witnesses, and found competent by the court following *voir dire.*

Mrs. Juanita F., the victim's mother, testified that she had been babysitting with some children and, since it was getting dark, began looking for her own children. The mother went outside and called for the children and just as she was approaching the middle of the street, Angel M. (5), who did not testify at the trial, ran out of the defendant's house and up to her exclaiming, "Juanita, . . . the children are all down at grandpa's, and he's playing nasties with them."

Following this bit of news the mother proceeded to the defendant's home with some alacrity, arriving just as the defendant was chasing the other children out the door. She testified that upon seeing the children her son Darrell complained of the acts committed upon him by the defendant, and further testified that her daughter and the other children told her of the incident at that same time. The children also related essentially the same story to the police.

The questions on appeal involve three areas, i.e., (1) sufficiency of the evidence; (2) admission of certain extrajudicial statements in the course of the trial, and (3) basic fairness of the trial and, in particular, certain comments by the prosecution and the court which may have constituted error.

Defendant contends that the evidence was insufficient to support the verdict. While we will briefly discuss this contention, it appears evident that the real issue is not sufficiency, per se, but a contention that the evidence is insufficient only *if* all of the allegedly objectionable evidence is not considered.

The acts complained of were witnessed and testified to by Judy F. and Steven M. as well as the victim himself and it is clear that the uncorroborated testimony of the victim of such acts is sufficient to sustain conviction. *(People* v. *Sylvia* (1960) 54 Cal.2d 115, 122 [4 Cal.Rptr. 509, 351 P.2d 781]; *People* v. *Cox* (1951) 104 Cal.App.2d 218, 219 [231 P.2d 91]; *People* v. *De La Roi* (1960) 185 Cal.App.2d 469, 471 [8 Cal. Rptr. 260]; *People* v. *Breeden* (1963) 213 Cal.App.2d 343, 344 [28 Cal.Rptr. 693]; *People* v. *Pilgrim* (1963) 215 Cal. App.2d 374, 379 [30 Cal.Rptr. 170]; *People* v. *Scholl* (1964) 225 Cal.App.2d 558, 561 [37 Cal.Rptr. 475].) Accordingly we can say the evidence herein is not only sufficient but is in fact very convincing.

██ ██ Objection is made regarding the testimony of the victim's mother as to certain statements allegedly made to her by the minor children involved immediately after the acts complained of.

Immediately after the alleged crimes were committed the children ran out of the defendant's house and into the street where they met Mrs. F. who was in quest of them. She was allowed to testify as to what they said—the following excerpt involves statements of the victim:

"Q. All right. But what did Darrell say happened to him?

"A. He says that—

"Mr. SCHACHTER: Objection. That is hearsay.

"Mr. PARKER: Well, a quick report by the child on the night of the crime is admissible.

"THE COURT: Overruled.

"THE WITNESS: He said the man was sucking his thing."

This testimony is clearly admissible on either or both of two theories, as a spontaneous declaration and under the "complaint" doctrine, although the statements would not necessarily be admissible for the same purposes under the two doctrines.

It is not clear from the record as to the purpose of the foregoing testimony. If the statements were admitted to show the truth of the matter stated, i.e., "He said the man was sucking on his thing," they are clearly hearsay (see Witkin, Cal. Evidence (2d ed., 1966) § 455, pp. 418-419; McCormick on Evidence, p. 460; cf. Evid. Code, § 1200) whereas if the statement was only admitted to show that a complaint was made by the victim rather than to show the truth thereof, then the evidence is not hearsay at all (see *Smith* v. *Whittier* (1892) 95 Cal. 279, 293-294 [30 P. 529]; Witkin, *op. cit. supra*).

If hearsay, the testimony falls within the spontaneous declaration exception to the rule. ██ As stated in *Showalter* v. *Western Pacific R.R. Co.* (1940) 16 Cal.2d 460, 468 [106 P.2d 895], to render spontaneous declarations admissible "it is required that (1) there must be some occurrence startling enough to produce this nervous excitement and render the utterance spontaneous and unreflecting; (2) the utterance must have been before there has been time to contrive and misrepresent, i.e., while the nervous excitement may be supposed still to dominate and the reflective powers to be yet in abeyance; and (3) the utterance must relate to the circumstance of the occurrence preceding it. (Wigmore on Evidence,

[2d ed.], § 1750.)'' (See also Witkin, *op. cit., supra,* § 544, pp. 516-518; cf. Evid. Code, § 1240.[2])

 The facts of the instant case disclose the victim running from the defendant's house immediately after the crimes alleged have been perpetrated upon him and thereupon making statements as to the nature of these activities to his mother. While the hearsay exception as herein applied presents somewhat of a ''bootstrap'' argument, circumstances fulfill all of the requisites as set forth in *Showalter, supra.* The ''bootstrap'' argument is this. If the crimes were in fact committed as alleged, then there is the required nervous excitement, if not, then no excitement and no hearsay exception. This particular point does not appear to have been raised in cases discussing the excited utterances exception although we observe that many of the leading cases on this subject involve the *circumstances* of a crime or an accident and do not extend to establishing the *happening* itself. (E.g., *Showalter* v. *Western Pacific R.R. Co., supra,* 16 Cal.2d 460; *Lane* v. *Pacific Greyhound Lines* (1945) 26 Cal.2d 575 [160 P.2d 21]; *People* v. *Costa* (1953) 40 Cal.2d 160 [252 P.2d 1].) Whatever merit the foregoing discussion may possess, however, it seems in the instant case there is sufficient corroboration of the activities attested to by direct testimony to overcome any objection as to the source of the excitement.

 Even, however, should the testimony not qualify under the hearsay exception, it appears to fall within the so-called ''complaint'' doctrine. In *People* v. *Burton* (1961) 55 Cal.2d 328, 351 [11 Cal.Rptr. 65, 359 P.2d 433], the court, in a case not unlike our own, stated the explanation for the rule: ''It is natural to expect that the victim of such a crime would complain of it, and the prosecution can show the fact of complaint to forestall the assumption that none was made and that therefore the offense did not occur.'' Within this rule, while the entire details of the crime may not be recounted, it can be shown that the complaint related to the matter inquired into and was not a complaint wholly foreign to the charged crimes. (*People* v. *Burton, supra,* 55 Cal.2d 328, 351-352; see also *People* v. *Ewing* (1925) 71 Cal.App. 138, 142

---

[2]The new Evid. Code, effective January 1, 1967, generally restates the rule of *Showalter* v. *Western Pacific R.R. Co., supra:* ''Evidence of a statement is not made inadmissible by the hearsay rule if the statement:

'' (a) Purports to narrate, describe or explain an act, condition, or event perceived by the declarant; and

'' (b) Was made spontaneously while the declarant was under the stress of excitement caused by such perception.''

[234 P. 917]; *People* v. *Guiterez* (1932) 126 Cal.App. 526, 529 [14 P.2d 838]; *People* v. *Pike* (1960) 183 Cal.App.2d 729, 734-735 [7 Cal.Rptr. 188]; *People* v. *Pacheco,* 220 Cal.App.2d 320, 325 [33 Cal.Rptr. 735]; Witkin, Cal. Evidence (2d ed., 1966) § 543, pp. 515-516.)

■ While we cannot view the "complaint" doctrine as engrafting an additional exception upon the hearsay rule and while it is additionally true that the jury was not advised as to the purpose for which the testimony at issue was being admitted nor did defendant make any request for clarifying instructions in this regard, we view it as admissible under either theory and feel no error was committed.

■ Defendant next complains regarding the admissibility of certain extrajudicial statements made to the victim's mother by the five-year-old girl, Angel M., who was not presented as a witness at the trial.[3] These statements also fall within the "excited utterances" exception to the hearsay rule (see *Showalter* v. *Western Pacific R.R. Co., supra,* 16 Cal.2d 460) and are accordingly admissible despite the contention that the hearsay declarant, here a five-year-old girl, did not appear at the trial. There is in fact a dearth of California authority concerning the admissibility of spontaneous utterances by hearsay declarants who have not been found competent to testify. In *People* v. *Guiterez, supra,* 126 Cal.App. 526, the court without objection admitted the hearsay declaration by a five-year-old victim of an indecent assault. The victim had *expressly* been found incompetent to testify at trial. In reviewing the conviction the appellate court first noted the admissibility of certain of the statements under the "complaint" doctrine (see *People* v. *Burton, supra,* 55 Cal.2d 328, 351) and additionally, while questioning the admissibility of statements going beyond mere complaint, noted the failure to object below barred subsequent complaint on appeal. (*People* v. *Guiterez, supra,*

---

[3] The testimony complained of is as follows:

"Q. And then Angel came out, ran out of the house; is that right?

"A. Yes, sir.

"Q. And ran out to you?

"A. Yes, sir.

"Q. What did she say?

"A. She said ——

"MR. SCHACHTER: I will object on the grounds it is hearsay.

"THE COURT: All right, overruled.

"MR. PARKER: I asked for it under the res gestae rule, for the purpose of the record.

"THE COURT: Go ahead.

"Q. (By Mr. Parker) What did she say?

"A. She says, 'Juanita,' she says, 'the children are all down at grandpa's and he's playing nasties with them.' . . .''

126 Cal.App. 526, 534.) ▮▮ We think the rule is properly stated by *Jones* as follows: "As a general rule, the fact that a person is incompetent to testify as a witness does not affect the admissibility of his declarations in evidence. Thus the statements of children, disqualified by reason of infancy from being competent witnesses, if such statements are part of the res gestae, have been admitted, whether they are themselves sufferers of wrong or injury or are merely present at the time of an accident or the commission of a crime." (2 Jones on Evidence (5th ed., 1958) § 331, p. 622; see also Annot. 83 A.L.R.2d 1368, 1385 "Declarant's age as affecting admissibility as res gestae," in accord with *Jones, supra;* cf. *People* v. *Ewing, supra,* 71 Cal.App. 138, 143; but see *People* v. *Guiterez, supra,* 126 Cal.App. 526, 534.)

▮▮ The spontaneity of the declarations lend credibility to the exclamations of a hearsay declarant who might be otherwise incompetent, due to minority or other valid reasons, to testify at trial.

The People additionally urge admissibility under the "complaint" doctrine although they concede, as they must, both the point that said doctrine applies only to the *victim* of the crime and the absence of any direct authority in support of the argument. We find no cause to extend the "complaint" doctrine. Its purpose is to permit the prosecution to show "the fact of complaint to forestall the assumption that none was made and that therefore the offense did not occur." (*People* v. *Burton, supra,* 55 Cal.2d 328, 351.) But this principle does not extend with equal force to mere witnesses to the crime as distinguished from the victim thereof. Moreover, Angel's statements, i.e., "he's playing nasties with them," appear to go beyond the issue of complaint and be more addressed to supporting the truth of the matter alleged.

▮▮ Defendant next questions the basic fairness of the trial and, in particular, he alludes to allegedly prejudicial comments by both the court and the district attorney.

The first of a series of three such suggestions was relative to the reference by the prosecution to defendant's need for hospitalization and the inferences which might be drawn therefrom by the jury, i.e., a conviction might result in needed hospitalization rather than imprisonment.[4]

---

[4]The series of three comments, the first two on *voir dire* of prospective jurors and the third in final summation are as follows:

(1) "MR. PARKER: [On *voir dire* of prospective jurors.] I mean, we have certain laws in this type of case which deal with hospitalization and things like that, but this is not for the jury to determine. The jury is to

Any reference to possible punishment or the need for medical treatment was clearly error and was so assigned. The People urge the first remark, to the prospective jurors, may not be considered on appeal since the point was not raised below and further urge that any error resulting from the second and third remarks was cured by prompt objection and admonition to disregard them. We agree. ■ As we recently said in *People* v. *Ney* (1965) 238 Cal.App.2d 785, 790 [48 Cal.Rptr. 265]: "Misconduct of the prosecuting attorney may not be assigned as error on appeal if it has not been assigned at the trial unless, the case being closely balanced and presenting grave doubt of the defendant's guilt, the misconduct contributed materially to the verdict or unless the harmful results of the misconduct could not have been obviated by a timely admonition to the jury. [Citations.]" (See also *People* v. *Conover* (1966) 243 Cal.App.2d 38, 53 [52 Cal.Rptr. 172].)

■ Whether the prosecution has been guilty of prejudicial misconduct must be determined in the light of the particular factual situation involved. (*People* v. *Lyons* (1958) 50 Cal.2d 245, 262 [324 P.2d 556].) It is often held that deliberate and flagrant misconduct on the part of a prosecutor is too prejudicial to be cured by an instruction or an admonition. (See *People* v. *Kirkes* (1952) 39 Cal.2d 719, 726 [249 P.2d 1]; *People* v. *Tucker* (1958) 164 Cal.App.2d 624, 628 [331 P.2d 160].) We have difficulty in terming the conduct herein objected to as "flagrant misconduct"; we also have difficulty in viewing the case as "closely balanced." (See Witkin, Cal. Criminal Procedure (1963) §§ 751-760.) Evidence of guilt was clear and convincing, thus the error was cured by prompt admonition to the jury.

---

determine the facts of this case from the evidence they hear on the witness stand. Understand that?" (No objection made by defense.)

(2) "MR. PARKER: Okay. Are you familiar with any of the facilities we have in the State of California for the care and treatment of mentally disordered sex offenders——

"MR. SCHACHTER: Your Honor, I don't think that is proper *voir dire* at this time. He just said not to consider, and now he is going ——

"MR. PARKER: I will strike that.

"THE COURT: Sustained."

(3) "MR. PARKER: [In closing argument to the jury.] . . . This man, in his condition, does things like that, and probably needs some help in a hospital. This is something which will have to be determined, if you find him guilty, by the Court.

"MR. SCHACHTER: I move the Court to strike that last statement and admonish the jury to disregard it, as to what may happen. They are not to consider what may happen after.

"THE COURT: Sustained, and the jury is instructed to disregard that last statement of counsel."

..

■ The next allegedly prejudicial comment was made by the court. In the course of preliminary examination of Clara S., a witness, it was revealed she was a 22-year-old woman who was illiterate to the degree that she could not read or write and in fact could not spell her own name. The court then questioned of defense counsel: ''Are you satisfied she is a competent witness?''

It is difficult to view this remark as improper and in any event it was not prejudicial. The question of the competency of a witness is to be determined by the trial court in the exercise of its discretion. In *People* v. *McCaughan* (1957) 49 Cal.2d 409, 420 [317 P.2d 974], the court said: ''The question to be determined is whether the proposed witness's mental derangement or defect is such that he was deprived of the ability to perceive the event about which he is to testify or is deprived of the ability to recollect and communicate with reference thereto.'' (See (former) Code Civ. Proc., §§ 1879, 1880; cf. Evid. Code, § 701.)

Mrs. S. did not purport to be a witness to the crimes charged. Her testimony was that she had seen the victim, Darrell F., undo the defendant's pants on several occasions, and that the victim had a reputation in the community of being a liar. Even this testimony was seemingly impeached by later cross-examination — certainly no prejudice resulted. (Cal. Const., art. VI, § 13;* *People* v. *Watson* (1956) 46 Cal.2d 818 [299 P.2d 243].)

■ Defendant's final complaint is directed at remarks to him by the court. On cross-examination the defendant, who had taken the stand in his own behalf, was relating his version of what happened in his bedroom on the afternoon of June 8 when he was asked whether ''either one of these little kids [had] an erection?''[5] The court then expressed certain sentiments when defendant failed to comprehend the meaning of ''erection.''

Defendant contends the court's remarks cast doubt upon his credibility as a witness and was prejudicial misconduct. We cannot agree. We first note no objection was made at trial

---

*Reporter's Note: Amendment adopted Nov. 8, 1966.

[5]The testimony was as follows:
''Q. Did either one of these little kids have an erection?
''A. What?
''Q. Did either one of them have an erection?
''A. I don't get it. I don't get that.
''THE COURT: This is ridiculous. You don't know what an erection is?
''THE WITNESS: Well, not right offhand, no.''

to the matters now raised and while there may be exceptions to the general rule that the matter must be raised at trial (see *People* v. *Ney, supra,* 238 Cal.App.2d 782, 790, and cases cited; Witkin, Cal. Criminal Procedure (1963) § 750) we cannot say the instant remark is so serious as to invoke the exception. Having made no objection at trial the defendant may not now raise the point. (*People* v. *Amaya* (1952) 40 Cal.2d 70, 78 [251 P.2d 324]; *People* v. *Corrigan* (1957) 48 Cal.2d 551, 556 [310 P.2d 953].) Further, the jury was instructed as to the lack of intention on the part of the court to express any opinion of the credibility of any witness, and was specifically instructed to disregard any impression to the contrary. Thus any possible prejudice was cured.

The judgment appealed from is affirmed and the attempted appeal from the nonappealable order is dismissed.

Molinari, P. J., and Sims, J., concurred.