[Crim. No. 7420. Second Dist., Div. Three. May 12, 1961.]

THE PEOPLE, Respondent, v. ODELL DAVID DIXON, Appellant.

Martha Malone Louis for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Philip C. Griffin, Deputy Attorney General, for Respondent.

SHINN, P. J.—In an information defendant Odell David Dixon was charged with the murder of Henry Albert. He was also charged with four prior felonies. Defendant admitted the four prior felonies, but pleaded not guilty to the charge of murder. After a trial by jury, defendant was found guilty of murder in the second degree. The appeal is from the judgment of conviction.

Early in the afternoon of May 7, 1960, defendant and one Whitaker had an argument in the latter's room. Defendant struck Whitaker in the face and threatened him with an open knife. Whitaker seized a table and used it for protection. One Ryan came into the room and attempted to stop the quarrel. Defendant threatened him with a knife and both Ryan and Whitaker escaped from the room. In the evening defendant and Whitaker separately went to the Hat Café. Bobby Charles and Henry Albert came into the bar. Defendant was not acquainted with either of them. Albert sat down beside Whitaker and asked him for a cigarette. Defendant objected to Whitaker's giving Albert a cigarette, stating that he had purchased them for Whitaker and not for Albert and Albert asked "What is wrong with you?" Later there was a conversation between Albert, Charles and defendant as to who would purchase the next drink. Defendant drew a knife on Albert who stepped back still saying "What is wrong?" Beecham, the bartender, interceded and told defendant to put away the knife, which he did. It was the same knife with which defendant had previously threatened Whitaker. Albert left the bar and was gone 5 or 10 minutes. When he returned, the bartender said he did not want any trouble in the bar; defendant and Albert replied that there would be no trouble, shook hands and apologized. Charles Warren, who was both bartender and bouncer, was present at the time. Albert and Charles left the bar and sat down in a booth. Thirty or forty minutes later Whitaker, followed by Albert, walked down a hallway 30 or 40 feet to the restroom. Some five minutes later defendant walked down the hallway and met Whitaker and Albert as they were returning from the restroom. Defendant was holding an open knife, which he exhibited and stated: "This is it." Whitaker continued on and sat down at the bar. Defendant and Albert returned to the restroom. Whitaker heard a commotion, heard defendant's voice, and something falling. He reported that fact to Beecham who called Warren. When Warren entered the restroom he found Albert and Charles. Albert, who was bleeding profusely, was leaning over the urinal, supported by Charles. Warren asked defendant to call the police and an ambulance and defendant replied that he would call the police but that he would not call an ambulance for the "son of a bitch." The police were called. Defendant left the bar and was walking rapidly away on the street when

he was overtaken and arrested by the police. He denied to the police that he had been in the bar. Later on he admitted to them that he had looked into the bar for a friend, but not finding him, had not remained. When he was searched no knife was found on his person, but in the restaurant part of the bar a knife was found, covered with blood, which was identified as the knife previously in defendant's possession. There were splotches of blood on defendant's clothing and shoes. Albert expired on the way to the receiving hospital.

Defendant took the stand and admitted having struck Whitaker earlier in the day and having threatened him with a knife. He denied having drawn a knife in the barroom but admitted that the bartender had ordered him to put away his knife. He denied the testimony of Whitaker that he exhibited a knife or had made any threat when he met Whitaker and Albert in the hallway, and denied having stabbed Albert.

 The only contention on appeal is that the court erred in failing to give, of its own motion, an instruction on manslaughter. We cannot agree with this contention. Defendant argues that there was evidence upon which the jury could have determined that the homicide was committed without malice and in the sudden heat of passion (Pen. Code, § 192), and therefore have found him guilty of manslaughter. The argument assumes that there was a violent quarrel between defendant and Albert, that defendant was so provoked and angry as to have lost all self-control and that the killing took place before he had had time in which to "cool off." These assumptions are diametrically opposed to the facts which were clearly established by the evidence. There was no evidence of a violent quarrel, or that defendant was provoked into anger, or lost control of his emotions and actions; only defendant displayed a disposition to be mean and quarrelsome. He and Albert shook hands and apologized. Thirty or forty minutes elapsed from the time of the dispute over the drinks to the time of the killing.

While the evidence connecting defendant with the crime was entirely circumstantial, it was of such a character as to leave no room for doubt he was guilty of a senseless and cold-blooded homicide. All the evidence was addressed to the question whether defendant committed the murder. His sole defense was that he did not commit the crime. Admitting that he failed to defend upon the theory of manslaughter, defendant cites *People* v. *Temple,* 102 Cal.App.2d 270, 280 [227 P.2d 500], to the effect that it is the evidence and not

the theory advanced by the prosecution, or that adopted by the defense, which governs a court in giving or refusing to give instructions. It is argued that the trial court should have looked beyond the defense that defendant did not commit the homicide, and upon its own theory that the homicide was not necessarily murder, should have given a manslaughter instruction.

Defendant not only failed to offer any evidence that would justify a manslaughter instruction, but failed to suggest at the trial any plausible theory upon which such an instruction may even have been proper. Defendant testified that he was not the person who stabbed the deceased. Obviously his claim that an instruction for manslaughter should have been given is logically incompatible with the claim that he was not the person who committed the crime.

The argument between defendant and Albert fell far short of the type that has been considered sufficient to show heat of passion. ▉ Words or gestures, no matter how grievous or insulting, are not sufficient provocation to reduce an intentional homicide with a deadly weapon to manslaughter. (*People* v. *French*, 12 Cal.2d 720, 744 [87 P.2d 1014].)

▉ Moreover, 30 to 40 minutes passed between the time of the argument and the commission of the crime, defendant and Albert had shaken hands and apologized and there was no evidence whatever that defendant was not in full control of his emotions. During the intervening time he conceived a purpose to assault Albert with a knife. These facts did not warrant a belief that the deceased was stabbed upon a sudden quarrel or heat of passion. In *People* v. *Mitchell*, 14 Cal.2d 237, 241, 244 [93 P.2d 121], testimony was given by defendant to the effect that immediately prior to the killing of his estranged mistress he had been in a conversation or "quarrel" with her over money which she was holding for him. After he had asked her several times for the money, she "wheeled around with a knife in her hand and said, 'I'll give it to you; I'll fix you!' " The defendant then shot her. It was held that an instruction on manslaughter was properly refused as nothing in defendant's testimony indicated to the slightest extent that he killed the deceased either upon a sudden quarrel or in the heat of passion.

In *People* v. *Manzo*, 9 Cal.2d 594, 599 [72 P.2d 119], the defendant had dug a ditch across Garcia's land. An argument resulted and each cursed the other with Garcia finally telling

the defendant that he was going to kill him. After several months of strained relations, at 3 o'clock in the morning, Garcia and several friends were talking in a yard close to the defendant's. The defendant approached them and Garcia pushed one of his friends aside and started to curse the defendant, whereupon the defendant cursed Garcia. He told Garcia not to push his friend around and Garcia told him that it was none of his business. Immediately the defendant shot Garcia. Although the shooting occurred during a heated argument it was held that it was not error to fail to give an instruction on manslaughter.

There was much less occasion in the present case for an instruction on manslaughter than existed in either of the mentioned cases. To hold that the circumstances of the killing of Albert called for an instruction on manslaughter would be without precedent. We are convinced that the evidence on the whole case compelled the jury to find appellant guilty of an offense of greater magnitude than manslaughter, or else acquit him. Under these facts the trial court was not required to charge the jury on the law of manslaughter. (*People* v. *Ong Git,* 23 Cal.App. 148, 156 [137 P. 283], and cases cited.)

The judgment is affirmed.

Vallée, J., and Ford, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 12, 1961.