Filed 8/12/14  P. v. Hubbard CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ROBERT HUBBARD,<br><br>    Defendant and Appellant. | B251830<br><br>(Los Angeles County<br>Super. Ct. No. BA4066077) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Dennis J. Landin, Judge.  Affirmed in part, modified in part, and reversed in part with directions.

Alex Coolman, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Noah P. Hill and Erika D. Jackson, Deputy Attorneys General, for Plaintiff and Respondent.

# I. INTRODUCTION

A jury convicted defendant, Robert Hubbard, of attempted murder. (Pen. Code, §§ 664, 187, subd. (a).)[1] The jury found the attempted murder was willful, deliberate and premeditated. (§ 189.) The jury further found true deadly weapon use and great bodily injury enhancement allegations. (§§ 12022, subd. (b)(1), 12022.7, subd. (a).) Defendant waived a jury trial as to prior conviction allegations. The trial court found true prior serious or violent felony conviction and prior separate prison term enhancement allegations. (§§ 667, subds. (a)(1), (b)-(i), 667.5, subd. (c), 1170.12.) Defendant, who was found to have been twice convicted of serious and violent felonies, was sentenced to 39 years to life in state prison. We modify the judgment in part and reverse in part with directions.

# II. THE EVIDENCE

## A. The Prosecution's Case

### 1. The Victim

Edward William Lizama went to the skid row area of downtown Los Angeles on December 23, 2012. He was near Sixth and San Julian Streets. Around 11 p.m., Mr. Lizama was handing out food. Defendant was in his partially closed tent. Mr. Lizama repeatedly offered defendant food. Defendant kept saying: "What? I said no." Defendant emerged from his tent carrying a silver knife. Mr. Lizama then began to "preach" the Gospel to defendant. Defendant said: "What did you fucking say? What did you fucking say?" Defendant was cursing at Mr. Lizama. Mr. Lizama testified, "He cussed at me, and I returned cussing at him." Mr. Lizama said, "Fuck you." Defendant

---

[1] Further statutory references are to the Penal Code unless otherwise noted.

2

came towards Mr. Lizama saying: "What did you say? What did you say? I ain't scared of you." Defendant and Mr. Lizama were face to face. Defendant stabbed Mr. Lizama in the abdomen. Mr. Lizama punched defendant hard in the head. Defendant stabbed Mr. Lizama a second time, below the right elbow. While Mr. Lizama was being stabbed, an unidentified African-American individual in dark clothing approached. The unidentified African-American individual struck Mr. Lizama in the back of the head. Mr. Lizama turned around to see who punched him. The unidentified attacker said: "You'd better get out of here. You're bleeding a lot." When police officers arrived, Mr. Lizama identified defendant as the man who stabbed him.

Mr. Lizama underwent surgery. He spent three or four days in the hospital. Mr. Lizama subsequently developed an abscess and underwent a second surgery. At the time of trial, Mr. Lizama continued to experience pain. He was receiving therapy for his injuries. Mr. Lizama never produced a weapon. Mr. Lizama never threatened defendant or the unidentified attacker. The jury viewed videotape footage from surveillance cameras that captured the assault.

At the preliminary hearing, Mr. Lizama had testified that two people hit him from behind. At trial, Mr. Lizama said he learned that information from an individual only identified as Detective Flores. At the conclusion of the redirect examination of Mr. Lizama, the following transpired; "Q Is there any doubt in your mind that the man in court is the man that stabbed you that evening? [¶] A Yes. That's the man who stabbed me."

## 2. Officer Steve Rodriguez

Officer Rodriguez arrived at the stabbing scene around 11:30 p.m. Mr. Lizama was walking in the middle of the street. Mr. Lizama's shirt was covered with blood. Mr. Lizama was waving at Officer Rodriguez. Mr. Lizama was also bleeding from his right forearm. Mr. Lizama said he had just been stabbed. Mr. Lizama pointed to defendant and said, "That's the guy that stabbed me." Defendant was about 20 feet away.

3

Defendant was moving around near a tent. Officer Rodriguez ordered defendant to get on the ground. Defendant did not comply. Officer Rodriguez requested backup. After additional police officers arrived, defendant was taken into custody. Officer Rodriguez was unable to locate any weapon that might have been used to stab Mr. Lizama. Mr. Lizama told Officer Rodriguez that other individuals were involved in the assault. But Mr. Lizama was unable to identify them. Officer Rodriguez said: "[H]e kept on indicating that he was just trying to preach to the guy, and he doesn't know where he stabbed him. He was just trying to preach to him."

Later, at the hospital, Mr. Lizama told Officer Rodriguez the following. Mr. Lizama had approached defendant and offered some bread. Defendant became angry as Mr. Lizama tried to preach. Defendant went into his tent. Mr. Lizama thought defendant grabbed a knife. Defendant then walked up to Mr. Lizama and continued to shout profanities. An unidentified male hit Mr. Lizama in the back of the head. That is when defendant produced the knife. It was a fold-up silver knife with a five-inch blade. Defendant lunged at Mr. Lizama several times with the knife. Mr. Lizama suffered knife wounds to his arm and abdomen.

## B. The Defense Case

Dwayne White was employed by Full Digital Sound, a company that accepted court appointments. Mr. White was asked to enhance a one-minute portion of an eight-minute videotape of the assault. In a series of enhanced recordings, Mr. White magnified the portion of the videotape that depicted the assault. He also slowed down the recording. The enhanced and slowed portions of the videotape were played for the jury at trial and during counsels' closing arguments.

## III. DISCUSSION

### A. Jury Instruction

Defendant argues the trial court should have sua sponte instructed the jury on attempted voluntary manslaughter as a lesser included offense. Defendant relies on evidence Mr. Lizama provoked defendant. The parties discussed this question during the trial: "The Court: . . . Regarding jury instructions, do you expect to ask for any beyond those relating to attempted murder? [¶] [Deputy District Attorney Tricia] Taylor: No. [¶] The Court: How about you? [¶] [Deputy Alternate Public Defender Thomas] Ahearn: No. [¶] The Court: It occurred to me that there is - - in the event that [the jurors] believe that your client actually did the stabbing, there is some information regarding a verbal altercation. I'm going to look at this a little more. But it seems that a lesser included instruction might be appropriate. [¶] Mr. Ahearn: Which would be what charge, Judge? I think there is lesser related, but I don't know that there is lesser included. [¶] The Court: Well - - [¶] Mr. Ahearn: 245 isn't a lesser included of an attempted murder. That I'm sure. Attempted murder requires specific intent to kill. And ADW is a general intent. [¶] The Court: You're right about that. There might not be anything in between. [¶] Mr. Ahearn: I don't think so."

A trial court must instruct, even absent a request, on lesser included offenses supported by substantial evidence. (*People v. Wyatt* (2012) 55 Cal.4th 694, 698; *People v. Breverman* (1998) 19 Cal.4th 142, 162.) Our Supreme Court has held, "[T]he existence of '*any* evidence, no matter how weak' will not justify instructions on a lesser included offense, but such instructions are required whenever evidence that the defendant is guilty only of the lesser offense is 'substantial enough to merit consideration' by the jury. [Citations.] 'Substantial evidence' in this context is '"evidence from which a jury composed of reasonable [persons] could . . . conclude[]"' that the lesser offense, but not the greater, was committed. [Citations.]" (*People v. Breverman, supra,* 19 Cal.4th at p. 162; accord, *People v. Taylor* (2010) 48 Cal.4th 574, 623.)

5

Attempted voluntary manslaughter is a lesser included offense of attempted murder.  (*People v. Fields* (1996) 13 Cal.4th 289, 304; *People v. Lopez* (2011) 199 Cal.App.4th 1297, 1304, fn. 35; *People v. Jones* (2010) 187 Cal.App.4th 266, 270.)  "Manslaughter is the unlawful killing of a human being without malice."  (§ 192; *People v. Rios* (2000) 23 Cal.4th 450, 460; *People v. Lee* (1999) 20 Cal.4th 47, 60.)  Voluntary manslaughter can occur when the killing is "upon a sudden quarrel or heat of passion" on sufficient provocation.  (§ 192, subd. (a); *People v. Lee, supra,* 20 Cal.4th at p. 60.)  An attempted murder may be reduced to attempted voluntary manslaughter where the evidence shows the defendant acted upon a sudden quarrel or in the heat of passion.  (*People v. Millbrook* (2014) 222 Cal.App.4th 1122, 1137; *People v. Gutierrez* (2003) 112 Cal.App.4th 704, 708-709; see *People v. Barton* (1995) 12 Cal.4th 186, 199.)  Heat of passion reduces an attempted killing from attempted murder to attempted voluntary manslaughter by negating the malice element.  (*People v. Gutierrez, supra,* 112 Cal.App.4th at p. 708; see *People v. Rios, supra,* 23 Cal.4th at p. 471 (conc. opn. of Mosk, J.) ["provocation reduces malice aforethought from the more culpable mental state of murder only to the less culpable one of voluntary manslaughter"].)

The test for adequate provocation is objective.  (*People v. Lee, supra,* 20 Cal.4th at p. 60; *People v. Sedeno* (1974) 10 Cal.3d 703, 719, disapproved on another point in *People v. Breverman, supra,* 19 Cal.4th at pp. 149, 165.)  Our Supreme Court has held: "An intentional, unlawful [attempted] homicide is 'upon a sudden quarrel or heat of passion' (§ 192[, subd. (a)]), and is thus [attempted] voluntary manslaughter (*ibid*), if the [perpetrator's] reason was actually obscured as the result of a strong passion aroused by a 'provocation' sufficient to cause an '"ordinary [person] of average disposition . . . to act rashly or without due deliberation and reflection, and from this passion rather than from judgment.'"  [Citations.]  '"[N]o specific type of provocation [is] required . . . .'"  [Citation.]  Moreover, the passion aroused need not be anger or rage, but can be any '"'[v]iolent, intense, high-wrought or enthusiastic emotion'"' [citation] other than revenge [citation]."  (*People v. Breverman, supra,* 19 Cal.4th at p. 163; accord, *People v.*

6

*Beltran* (2013) 56 Cal.4th 935, 942, 950; *People v. Moye* (2009) 47 Cal.4th 537, 541, 549-550.)

However, our Supreme Court has held, "'A provocation of slight and trifling character, such as words of reproach, however grievous they may be, or gestures, or an assault, or even a blow, is not recognized as sufficient to arouse, in a reasonable man, such passion as reduces an unlawful killing with a deadly weapon to manslaughter . . . .'" (*People v. Wells* (1938) 10 Cal.2d 610, 623; accord, *People v. Manzo* (1937) 9 Cal.2d 594, 599, overruled on a different point in *People v. Valentine* (1946) 28 Cal.2d 121,144 [verbal altercation between defendant and victim with each cursing the other]; *People v. Gutierrez* (2009) 45 Cal.4th 789, 826-827 [verbal exchange during which victim cussed the defendant, scratched his chest, kicked him and grabbed his shirt]; *People v. Najera* (2006) 138 Cal.App.4th 212, 226 [victim called defendant a "faggot"], cited with approval in *People v. Moye, supra,* 47 Cal.4th at p. 551;see *People v. Manriquez* (2005) 37 Cal.4th 547, 586 [victim called defendant a "mother fucker" and taunted him]; *People v. Cole* (2004) 33 Cal.4th 1158, 1216 [victim told defendant she would put a "'butcher knife in your ass'"]; *People v. Lucas* (1997) 55 Cal.App.4th 721, 739 [vehicle occupants smirked, laughed and shouted at defendant]; *People v. Dixon* (1961) 192 Cal.App.2d 88, 91 [verbal argument between defendant and victim].)

Here, Mr. Lizama stood outside defendant's tent at 11:30 p.m. Mr. Lizama repeatedly offered defendant food. Defendant was uninterested. The two men engaged in a verbal altercation, exchanging profanities. Mr. Lizama began to preach the Gospel to defendant, which made defendant increasingly angry. This was insufficient evidence to merit consideration by the jury of the lesser included offense of attempted voluntary manslaughter. Mr. Lizama's actions and words were insufficient as a matter of law to arouse in a reasonable person such passion as reduces an unlawful killing with a deadly weapon to manslaughter.

Even if the trial court erred, we would find no prejudice. The duty to sua sponte instruct on a lesser included offense in a noncapital case arises under California law alone. (*People v. Beltran, supra,* 56 Cal.4th at p. 955; *People v. Breverman, supra,* 19

7

Cal.4th at p. 149.) Therefore, the standard of reversible error is whether it is reasonably probable the result would have been more favorable to defendant had the instruction been given. (*People v. Beltran, supra,* 56 Cal.4th at p. 955; *People v. Wyatt, supra,* 55 Cal.4th at p. 698.) Because there was insufficient evidence of adequate provocation, it is not reasonably probable the jury, even if instructed on voluntary manslaughter, would have found in defendant's favor. Moreover, the jury implicitly rejected any mitigation due to provocation when it found defendant acted willfully, deliberately and with premeditation. (*People v. Wharton* (1991) 53 Cal.3d 522, 572; see *People v. Millbrook, supra,* 222 Cal.App.4th at p. 1138; but see *People v. Berry* (1976) 18 Cal.3d 509, 518; *People v. Ramirez* (2010) 189 Cal.App.4th 1483, 1487-1488.) The jurors were here instructed: "The defendant acted *willfully* if he intended to kill when he acted. The defendant *deliberated* if he carefully weighed the considerations for and against his choice and, knowing the consequences, decided to kill. The defendant *premeditated* if he decided to kill before acting." In *Wharton,* our Supreme Court observed that deliberation and premeditation are "manifestly inconsistent" with acting in the heat of passion. (*People v. Wharton, supra,* 53 Cal.3d at p. 572; see *People v. Carasi* (2008) 44 Cal.4th 1263, 1306; *People v. Millbrook, supra,* 222 Cal.App.4th at p. 1138.)


## B. Conduct Credit


The trial court awarded defendant 289 days of presentence custody credit. The trial court did not, however, award any conduct credit. The parties contend and we agree defendant is entitled to 43 days of conduct credit. (§§ 2933.1, subd. (a), 667.5, subd. (c)(12); *People v. Chism* (2014) 58 Cal.4th1266, 1336-1337; *People v. Rosales* (2014) 222 Cal.App.4th 1254, 1262.) The judgment must be modified and the abstract of judgment amended to so provide. (*People v. Miles* (2013) 220 Cal.App.4th 432, 437; *People v. Donan* (2004) 117 Cal.App.4th 784, 792-793.)

## C. Prior Separate Prison Terms

The trial court found defendant had served two prior separate prison terms within the meaning of section 667.5, subdivision (b)—case Nos. BA359207 and BA192610. We asked the parties to brief the question whether the trial court properly sentenced defendant under section 667.5, subdivision (b), as to case No. BA192610. The trial court's sentencing decision was not entirely clear: "The Court: . . . The one-year priors alleged under 667.5(b) are - - and I believe there are two of those - - is that correct counsel? [¶] Ms. Taylor: That's correct, Your Honor. [¶] The Court: I will impose them and stay them. . . . . [¶] Mr. Ahearn: Your Honor, I think there was only one one-year prior proven. [¶] The Court: That's right. I do recall one was dismissed. [¶] Mr. Ahearn: I believe it was a 11351.5, not two. [¶] The Court: Well, the juvenile convictions [alleged under sections 667, subdivisions (b) through (i), and 1170.12] were dismissed. Yes, I have in my notes only one of the 667.5 priors was proven. In any event, I'm imposing that and staying it."

To begin with, on August 21, 2013, the trial court found two prior prison term enhancement allegations were true. The trial court's lack of recollection was no doubt the result of a one-month continuance after the verdict and prior conviction findings were returned. And neither lawyer brought this inadvertency to the trial court's attention. On August 21, 2013, the trial court found true the allegations defendant was sentenced to prison in case Nos. BA192610 (robbery) and BA359207 (cocaine base possession for sale). On August 21, 2013, the trial court did not explicitly state it was finding the prison term allegations true, as distinguished from the conviction itself. But the entire tenor of the proceedings indicates the trial court found the information's recidivism allegations true. Further, defendant does not challenge the prior prison term findings as such would only lead to a brief retrial and inevitable findings the prior prison term allegations are true. The uncontroverted evidence indicates they are in fact true.

Thus, the issue before us is the trial court's misapprehension as to the number of prior prison term enhancements before it when defendant was sentenced. The best way

9

to resolve the matter is to reverse the prior prison term stay order and then determine how to proceed. As will become clear, no stay order could be imposed for either prior prison term enhancement. As to case No. BA359207, the prior drug conviction, the trial court was required to either impose or strike the enhancement. (§ 1385, subd. (a); *People v. Torres* (2013) 213 Cal.App.4th 1151, 1161; *People v. Garcia* (2008) 167 Cal.App.4th 1550, 1559-1563.) Once the remittitur issues, the trial court must decide whether to strike or impose the one-year enhancement resulting from the prior prison term in case No. BA359207 (the drug case). And the trial court must set forth its reasons for striking the enhancement if it wishes to do so. (*People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, 531; see *People v. Garcia, supra,* 167 Cal.App.4th at p. 1559.)

With respect to case No. BA192610, on August 21, 2013, the trial court found that defendant served a prison term in connection with the prior robbery conviction. Also on August 21, 2013, the trial court found defendant previously sustained a robbery conviction in the same case which resulted in a prison term. When defendant was later sentenced, the trial court was required to strike the prior prison term enhancement in case No. BA192610, the robbery conviction. (*People v. Jones* (1993) 5 Cal.4th 1142, 1152-1153; *People v. Perez* (2011) 195 Cal.App.4th 801, 805; *People v. Johnson* 2002) 96 Cal.App.4th 188, 209, disapproved on another point in *People v. Acosta* (2002) 29 Cal.4th 105, 134, fn. 13.) Upon remittitur issuance, the trial court must strike the prior prison term in case No. BA192610.

## IV.  DISPOSITION

The order staying the prior prison term enhancement is reversed. Upon remittitur issuance, the trial court, in connection with the two prior prison term enhancements, is to proceed as described in the immediately two preceding paragraphs. Further, defendant is to be awarded 43 days of conduct credit. Thereafter, the superior court clerk is to prepare

an amended abstract of judgment and deliver it to the Department of Corrections and Rehabilitation.  The judgment is affirmed in all other respects.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


TURNER, P. J.


We concur:



MOSK, J.




MINK, J.[*]


---

[*] Retired Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.